[No. H025709. Sixth Dist. Jan. 5, 2004.]

In re CHERYL ANN CHAVEZ et al., on Habeas Corpus.

## COUNSEL

George W. Kennedy, District Attorney, and Neal J. Kimball, Deputy District Attorney, for Appellant The People.

Donald Specter and Keith Wattley, under appointments by the Court of Appeal, for Respondent Gilbert Frank Chavez.

Steve M. DeFilippis, under appointment by the Court of Appeal, for Respondent Cheryl Ann Chavez.

## OPINION

**PREMO, J.**—The People appeal from an order of the superior court granting the petitions of Cheryl Ann Chavez and Gilbert Frank Chavez for writs of habeas corpus. Petitioners had been sentenced to prison in 1998 for, among other things, four counts of filing false tax returns. (Rev. & Tax. Code, § 19705.)[1] At the time they were sentenced, section 19705 called for punishment in state prison for "not more than three years." The trial court interpreted that language as calling for "indeterminate" sentencing and sentenced petitioners accordingly.

In 2001 the Legislature changed the sentencing language of section 19705 to read: "imprisoned in the state prison." (Stats. 2001, ch. 854, § 65.5.) This revision made certain that the prescribed sentence would be interpreted as coming within the Determinate Sentencing Law (DSL). (Pen. Code, § 1170 et seq.) In the habeas corpus proceedings petitioners argued that the amended statute should be applied retroactively to them, presumably because it would reduce their punishment. The superior court issued the writ. For reasons we shall explain, we affirm.

### A. FACTUAL AND PROCEDURAL BACKGROUND

The district attorney filed an information charging petitioners with crimes arising from allegations that Cheryl Chavez had embezzled over $17 million

---

[1] Further undesignated statutory references are to the Revenue and Taxation Code.

from her employer. The information included seven counts: grand theft (Pen. Code, §§ 484, 487, subd. (a), count 1) (as to Cheryl Chavez only), possession of stolen property (Pen. Code, § 496, count 2), filing false tax returns (former § 19405, § 19705, subd. (a)(1),[2] counts 3, 4, 5, & 6), and failure to file a tax return, a misdemeanor (§ 19706, count 7). Counts 1 and 2 carried an enhancement allegation that the loss was greater than $2.5 million. (Pen. Code, § 12022.6, subd. (d).)

Petitioners were convicted on all counts. They were each sentenced to a total of seven years for the applicable principal count plus four consecutive indeterminate terms of "not more than three years" for counts 3 through 6.

By the end of 2001 the Legislature passed Senate Bill No. 205 (2001–2002 Reg. Sess.) (Sen. Bill 205), changing the punishment authorized by section 19705 to imprisonment "in the state prison." (Stats. 2001, ch. 854, § 65.5.) This change means that a violation of section 19705 is now punishable by a determinate term of 16 months, two years, or three years. (Pen. Code, §§ 18, 1168, subd. (a).)

Under indeterminate sentencing, the maximum term for one violation of section 19705 as it read in 1998 was three years. Under the revised law prescribing determinate sentencing the maximum is also three years. However, application of the terms is very different. Under indeterminate sentencing, the actual terms and eligibility for parole are determined by the Board of Prison Terms. When convicted of multiple counts, the offender may or may not be required to serve the maximum term for each count when consecutive sentences are imposed. Thus, the maximum term for four violations of section 19705 under indeterminate sentencing would be 12 years.

In contrast, under determinate sentencing, when a defendant is convicted of more than one felony and is to receive consecutive sentences, the sentence is calculated by taking the time for the principal term and adding one-third the middle term for each consecutive offense. (Pen. Code, § 1170.1, subd. (a).) Here, since the terms for the four violations of section 19705 were consecutive subordinate terms, the maximum time for all four counts would be no more than the product of four times one-third the middle term, or two years and eight months.

The District Attorney points out that under indeterminate sentencing an offender is theoretically eligible for parole on the first day of incarceration so

---

[2] The tax fraud counts were charged under former section 19405 and under section 19705, which replaced former section in 1994. (See Stats. 1994, ch. 1243, § 58.) At all relevant times, the sentencing provisions of the two statutes were identical. We shall simplify the discussion by referring to the charges as violations of section 19705.

that determinate sentencing does not necessarily lessen the punishment. Although it is theoretically possible that petitioners could have served less time under indeterminate sentencing, it is undisputed that the reverse is actually true. It is our understanding that both petitioners have already completed their determinate base terms and if determinate sentencing had applied to the subordinate terms they would have been released from prison by now. Apparently, they are both still incarcerated. Therefore, regardless of what their indeterminate terms theoretically could have been, in this case petitioners have been punished more harshly under the old law. Indeed, according to their attorneys, if petitioners are resentenced under the 2001 amendment they will be released from prison.

Petitioners sought relief by petitioning the superior court for a writ of habeas corpus. After extensive briefing, the superior court granted the petitions and ordered that petitioners' sentences for counts 3 through 6 be vacated and the matter set for resentencing. The People filed a timely notice of appeal. The superior court granted the People's request to stay its order pending appeal. This court denied Gilbert Chavez's motion for bail or release on his own recognizance but granted the matter calendar preference.

### B. Issue

The question before us is whether the Legislature intended the period of incarceration provided by the 2001 amendment to section 19705 to apply retroactively and if so, whether the new sentence may apply to petitioners even though the judgment against them was final before the amendment was operative.

### C. Discussion

Penal Code section 3 states: "No part of [the Penal Code] is retroactive, unless expressly so declared." Penal Code section 3 embodies the general rule that when there is nothing to indicate the contrary it will be presumed that the Legislature intended a statute to operate prospectively and not retroactively. "That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent." (*In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*).) In the absence of an express declaration, a statute may apply retroactively if there is " 'a clear and compelling implication' " that the Legislature intended such a result. (*People v. Grant* (1999) 20 Cal.4th 150, 157 [83 Cal.Rptr.2d 295, 973 P.2d 72], quoting *People v. Hayes* (1989) 49 Cal.3d 1260, 1274 [265 Cal.Rptr.

132, 783 P.2d 719].) "Various extrinsic aids, including the history of the statute, committee reports and staff bill reports may be used to determine the intent of the Legislature, and such aids are especially helpful where the wording of the statute is unclear. (*Kaiser Foundation Health Plan, Inc. v. Lifeguard, Inc.* (1993) 18 Cal.App.4th 1753, 1762 [23 Cal.Rptr.2d 235].)" (*DeCastro West Chodorow & Burns, Inc. v. Superior Court* (1996) 47 Cal.App.4th 410, 418 [54 Cal.Rptr.2d 792]; and see *Southern Cal. Gas Co. v. Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149].)

■ Since the amendment at issue here contains no express declaration as to whether or not it is to apply retroactively, we must ascertain whether there is a clear and compelling implication that the Legislature so intended. This is a pure question of law to which we apply our independent review. (*Burnsed v. State Bd. of Control* (1987) 189 Cal.App.3d 213, 218, fn. 3 [234 Cal.Rptr. 316].)

### 1. *Legislative History of Section 19705 (Former Section 19405)*[3]

Former section 19405 (now section 19705) made it a crime to file a false personal income tax return.[4] The crime has always been punishable by a fine or imprisonment or both. Prior to 1977, incarceration for the crime was set as the indeterminate term of "not more than 5 years." (Stats. 1951, ch. 369, § 2.)

Effective July 1, 1977, California repealed its 60-year-old Indeterminate Sentence Law and the DSL became operative. (Stats. 1976, ch. 1139, § 351.5, p. 5176.) The DSL replaced the vast majority of indeterminate felony sentences with determinate terms. Those crimes that remained subject to indeterminate sentencing were primarily those carrying life sentences and some minor felonies that called for punishment of not more than a year and a day. (See *In re Monigold* (1983) 139 Cal.App.3d 485, 490 [188 Cal.Rptr. 698].) Among the many sentences that were changed by the law was former section 19405, which was amended to read, "imprisoned in the state prison," reflecting a determinate term of 16 months, two years, or three years. (Stats. 1976, ch. 1139, § 327, pp. 5168–5169; Pen. Code, § 18.)

In 1983 the Legislature passed Senate Bill No. 813 (1983–1984 Reg. Sess.) (Senate Bill 813). Senate Bill 813 was a voluminous piece of legislation that

---

[3] We have granted petitioners' motion that we take judicial notice of the legislative materials cited herein.

[4] In its present form, section 19705 reads in pertinent part as follows: "(a) Any person who does any of the following shall be guilty of a felony and, upon conviction, shall be fined not more than fifty thousand dollars ($50,000) or imprisoned in the state prison, or both, together with the costs of investigation and prosecution: [¶] (1) Willfully makes and subscribes any return, statement, or other document, that contains or is verified by a written declaration that it is made under penalty of perjury, and he or she does not believe to be true and correct as to every material matter."

provided for extensive reforms of public education and included various financial provisions to fund them. The bill also revised portions of California tax law to make "various technical changes to the state tax laws to conform them, in part, to certain changes in the federal law made by other federal enactments." (Legis. Counsel's Dig., Sen. Bill 813 (1983–1984 Reg. Sess.) 4 Stats. 1983, Summary Dig., ¶ 58, p. 176.) In all, the bill consisted of 239 separate sections affecting over 200 different provisions from the Education Code, the Government Code, the Revenue and Taxation Code, and the Unemployment Insurance Code. (Stats. 1983, ch. 498, pp. 2031–2032.)

Section 19405 was one of the tax sections that Senate Bill 813 revised to conform to federal law. Prior to its amendment in 1983, former section 19405 prohibited only the filing of a false tax return. (See Stats. 1976, ch. 1139, § 327, pp. 5168–5169.) The analogous federal statute prohibited other wrongful acts, such as aiding in the preparation of a false return, concealing taxable goods, and the like. In addition, it provided for a larger fine than its state counterpart and it fixed the time for imprisonment at "not more than 3 years." (26 U.S.C. 7206.) Sen. Bill 813 changed former section 19405 to criminalize the additional acts listed in the federal law. It also increased the fine and changed the term of incarceration from "imprisoned in state prison" to the term prescribed by the federal law, "not more than three years." (Stats. 1983, ch. 498, § 164, p. 2168; and see 26 U.S.C. 7206.) The legislative history is entirely silent on the subject of the prison term.

In 1993 former section 19405 was renumbered as section 19705. The new statute retained the sentence described as "not more than 3 years." (Stats. 1993, ch. 31, § 26, pp. 286–287.)

Senate Bill 205 was introduced in 2001 at the urging of the California District Attorneys' Association. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 205 (2001–2002 Reg. Sess.) as amended May 7, 2001, p. 2.) The bill was said to be needed "to correct technical and grammatical errors in penal provisions in various codes." (*Id.* at p. 10.) The legislative history includes the following analysis: "Often times, as bills move through the legislative process and become law, errors in drafting are overlooked and subsequently codified. This cleanup bill makes numerous, nonsubstantive changes to clarify and update specific provisions of the California codes." (*Id.* at p. 8.) Similar language stressing the technical, nonsubstantive aspect of the bill's changes appears throughout the legislative history. Among the revisions proposed was an amendment returning the sentencing language of section 19705 to the phrase "in state prison" that had been inserted when the DSL was enacted in 1977.

As Senate Bill 205 was working its way through the Senate committees, the Fourth District Court of Appeal filed its .opinion in *People v. Hagen* (2001)

88 Cal.App.4th 378 [105 Cal.Rptr.2d 771] (*Hagen*). The defendants in *Hagen* had been convicted of violating former section 19405 and were originally sentenced as if the statute called for determinate sentencing. After the trial court received a letter from the Department of Corrections, the court resentenced the defendants to indeterminate terms. The Hagens appealed from this order arguing that the phrase "not more than three years" was a " 'single term of imprisonment' " as contemplated by Penal Code section 1168, subdivision (a), which would make it a determinate sentence. *Hagen*, which was the first judicial decision interpreting the sentencing portion of former section 19405, held that the language "not more than three years" demanded indeterminate sentencing and could not be treated as an equivalent determinate term. (*Hagen, supra,* 88 Cal.App.4th at p. 382.) As support for its conclusion *Hagen* cited the 1991 version of the California Judges Benchbook, which counseled that certain lesser crimes retained the "not more than" language of indeterminate sentencing and that such sentences were to be treated as indeterminate. (*Ibid.*, citing Cal. Judges Benchbook: Criminal Posttrial Proceedings (CJER 1991) Felony Sentencing, § 2.14, p. 36.) The only statute *Hagen* cited as an example of other non-life indeterminate terms was an uncodified initiative measure passed in 1919 (former Civ. Code, § 1916-3).

*Hagen* came to the attention of the Legislature and was cited as one of the reasons why section 19705 should be revised:

"With the exception of life terms, California prison terms are specified determinate terms. . . . [¶] However, an anomalous punishment provision in the Revenue and Tax Code provides that a person who submits a false income tax return shall receive a prison term of up to 3 years. A recent appellate decision confirmed that such provisions are indeterminate terms and that a sentencing court could not impose what it believed was a roughly equivalent determinate term, such as 2 years. (*People v. Hagen* (2001) [88] Cal.App.4th [378] . . . .) Other codes include such punishment provisions.

"Under existing law, there is no provision for the Department of Corrections or the Board of Prison Terms to determine when a person should be released from prison for a non-life indeterminate sentence. There are no provisions for setting when such a prisoner would be eligible for parole. Without conversion of these anomalous indeterminate sentencing provisions, the Department of Corrections and the Parole Board would be forced to create a whole new procedure for handling a very few number of cases." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 205, *supra*, pp. 8–9.)

Senate Bill 205 was signed into law and the amendment to section 19705 became operative January 1, 2002. (Stats. 2001, ch. 854, § 65.5.)

### 2. *The Legislature Intended to Apply the Determinate Sentence Retroactively*

The gist of the People's argument on appeal is that the 1983 amendment intentionally returned the sentence for tax fraud to an indeterminate term of not more than three years. As we understand the argument, this intentional change signals the Legislature's purpose to have the 1983 amendment operate long enough and consistently enough to convey to the public an understanding that the heavier penalty (i.e., the indeterminate term) will apply during the period it is in effect. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1046 [36 Cal.Rptr.2d 74, 884 P.2d 1022].) The argument requires that we determine the legislative intent of both the 1983 and 2001 amendments.

We begin with the 1983 amendment. "Although a substantial change in the language of a statute by an amendment indicates an intention to change its meaning, a mere change in phraseology, incident to a revision of the statute, does not result in a change of meaning unless the intent to make such a change clearly appears." (*DeCastro West Chodorow & Burns, Inc. v. Superior Court, supra,* 47 Cal.App.4th at p. 418.)

In passing Senate Bill 813 in 1983 the Legislature clearly intended to change the law. However, it is absurd to presume that one of the intended changes was to retreat from determinate sentencing for the crime of tax fraud. Rather, the surrounding circumstances suggest the change was unintentional. Changing to an indeterminate term for a non-life sentence would represent a dramatic divergence from the recently enacted DSL. For 60 years prior to 1977 California had an indeterminate sentencing law. (See *Way v. Superior Court* (1977) 74 Cal.App.3d 165, 168–169 [141 Cal.Rptr. 383] (*Way*).) The enactment of the DSL in 1977 marked a sea change in sentencing policy. (Pen. Code, § 1170, subd. (a)(1); *In re Stanworth* (1982) 33 Cal.3d 176, 182 [187 Cal.Rptr. 783, 654 P.2d 1311].) There is no dispute that in 1977 the Legislature intended that the crime of tax fraud should be punished with a determinate sentence. The People offer no explanation for why, just six years after completely overhauling the state's sentencing scheme, the Legislature might have decided to retreat from determinate sentencing for this single crime. If the 1983 change to "not more than three years" was truly meant to return the sentence to an indeterminate term, the change was sufficiently anomalous under California penal laws at the time that it seems unlikely the Legislature would have passed it without any comment whatsoever.

It is far more likely that Senate Bill 813's incongruous and unexplained reversion to indeterminate sentencing was the result of the drafters' attempt to track the federal language as closely as possible. With the exception of the amount of the fine and references to state law, the 1983 amendment to former

section 19405 repeats the federal law verbatim, including the use of the phrase "not more than three years" to describe the term of incarceration. If one is not looking for it, the determinate/indeterminate distinction between a provision calling for imprisonment in state prison and one calling for imprisonment for not more than three years may not be very apparent. Certainly, the distinction is not apparent from the words alone.

Our suspicion that the 1983 amendment was indeed a drafting error is strengthened by the fact that Senate Bill 813 was not focused upon penal laws but was a voluminous bill devoted in large part to educational reforms that required the simultaneous amendment of hundreds of code sections. Such circumstances can create a "dangerous potential for drafting errors." (*People v. Alexander* (1986) 178 Cal.App.3d 1250, 1262 [224 Cal.Rptr. 290].) Given the legislative history and the surrounding circumstances we are convinced the 1983 amendment was a drafting error and was not enacted for any deterrent purpose.

Turning to Senate Bill 205, it is clear the Legislature intended the amendment to section 19705 to correct the language to ensure that its sentencing provision would conform to existing determinate sentencing structure. Although *Hagen* was filed shortly after Senate Bill 205 was introduced, the controversy over the interpretation of the statute clearly preceded the legislative enactment and prompted the Legislature to make the correction. "An amendment enacted soon after controversies arise as to the interpretation of the original act may be regarded as a legislative interpretation of the original act." (*People v. Froom* (1980) 108 Cal.App.3d 820, 834 [166 Cal.Rptr. 786].) Furthermore, the legislative history repeatedly describes the changes intended by Sen. Bill 205 as "non-substantive." Non-substantive or technical changes are made to conform the statutes to existing law, not to change the law. The Legislature recognized that with few exceptions, an indeterminate term other than life was an anomaly in our penal system. Our state's correctional officials had no guidelines and no experience to assist them in dealing with this indeterminate three-year term. That lack of experience is glaringly apparent here where Gilbert Chavez alleges that correctional officers have variously characterized his sentence as "19 years to life" and as "three years to life" for each of the tax fraud counts.

Clearly implied in the extensive legislative history and the circumstances surrounding the 2001 amendment is that it was intended as a non-substantive correction of the anomalous provision inadvertently inserted by the 1983 amendment. The Legislature's acknowledgement that the most recent amendment was needed " 'to address a concern' and 'to fix a mistake' " suggests the Legislature intended the new law to be applied retroactively. (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 172 [110 Cal.Rptr.2d 111].) That

suggestion is borne out by the legislative history, which explains that without "conversion" of the anomalous indeterminate sentences, the Board of Prison Terms would have to create a policy to cover only a handful of cases. The 2001 amendment could not deal with this concern if it did not apply to persons already serving the indeterminate terms. The unavoidable conclusion is that the Legislature intended the amendment to apply to persons sentenced under the anomalous statute to the extent it could constitutionally be so applied.[5]

### 3. *Estrada Does Not Bar Amelioration of Petitioners' Final Judgments*

The judgments against petitioners were final well before they filed their habeas corpus petitions. Citing *Estrada, supra,* 63 Cal.2d 740, the People argue that even if the 2001 amendment may be applied to persons convicted under the former version of section 19705, it may not be applied to petitioners because their judgments were already final. We disagree.

*Estrada* stands for the rule that when the Legislature amends a statute for the purpose of lessening the punishment, in the absence of clear legislative intent to the contrary, a criminal defendant should be accorded the benefit of a mitigation of punishment adopted before his criminal conviction became final. (*Estrada, supra,* 63 Cal.2d at p. 748.) To be sure, the common law rule had always been that a statute mitigating punishment applied to acts committed before its effective date as long as no final judgment had been rendered. (*People v. Rossi* (1976) 18 Cal.3d 295, 298 [134 Cal.Rptr. 64, 555 P.2d 1313], citing *People v. Hayes* (1894) 140 N.Y. 484 [35 N.E. 951].) At the time *Estrada* was decided, however, a line of California cases had interpreted the general savings clause of Government Code section 9608[6] as completely abrogating this rule. *Estrada* merely revived the rule. (*Estrada, supra,* 63 Cal.2d at p. 747.)

---

[5] The People have also argued that the 2001 amendment was not "ameliorative" and thus cannot support an inference that the Legislature intended retroactive application. It is true when the Legislature lessens the punishment for a particular crime it is often interpreted to mean that the Legislature intends the new statute to be retroactive. (*Estrada, supra,* 63 Cal.2d 740.) However, lessening of the punishment is not the only way the Legislature signals its intent to apply the statute retroactively. We have concluded that the Legislature's intent to correct an anomalous sentencing provision in this case shows that the Legislature intended the new law to be applied to persons already imprisoned under the old law. Obviously, if the amended statute would not have an ameliorative effect, the ex post facto clause would preclude retroactive application. (*In re Griffin* (1965) 63 Cal.2d 757, 761 [48 Cal.Rptr. 183, 408 P.2d 959].)

[6] Government Code section 9608 provides in full: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law."

There is nothing in *Estrada* that prohibits the application of revised sentencing provisions to persons whose sentences have become final if that is what the Legislature intended or what the Constitution requires. For example, Penal Code section 1170.2 permitted the DSL to be applied retroactively. *Way* held that application of Penal Code section 1170.2 to final judgments was not inconsistent with the supposed final judgment rule of *Estrada*. *Way* found the distinction to be that sentences would be revised by the DSL "only as an incident of a major and comprehensive reform of an entire penal system. In view of the legislative objective, the final judgment rule must yield." (*Way, supra,* 74 Cal.App.3d at p. 180.)

The People argue that *Way* does not apply here because the 2001 amendment was not passed as part of a major and comprehensive reform of the entire penal system. We do not read *Way* so narrowly. The key factor in *Way* was the Legislative objective to reform the penal system, not the fact that the bill itself was comprehensive. The legislative history of Sen. Bill 205 makes it clear that the Legislature had a similar motivation here. The legislative motivation was to conform the law to existing determinate sentencing for the same reason it enacted the DSL in 1977, i.e., to achieve equality and uniformity in felony sentencing. (Pen. Code, § 1170, subd. (a)(1).)

■ Even where the Legislature expressly intends an ameliorative provision to apply prospectively, constitutional considerations may require that it be applied retroactively. In such a case, the finality of the judgment is no impediment to retroactive application of the new law. *In re Kapperman* (1974) 11 Cal.3d 542, 544–545 [114 Cal.Rptr. 97, 522 P.2d 657] (*Kapperman*) held that an express prospective limitation upon the statute creating presentence custody credits was a violation of equal protection because there was no legitimate purpose to be served by excluding those already sentenced. *Kapperman* directed the Adult Authority (predecessor to the Board of Prison Terms) to extend custody credits to incarcerated persons "regardless of the date of their commitment." (*Id.* at p. 550.)

■ It thus appears settled that a final judgment is not immune from the Legislature's power to adjust prison sentences for a legitimate public purpose. (*Kapperman, supra,* 11 Cal.3d at p. 547; and see *People v. Community Release Bd.* (1979) 96 Cal.App.3d 792, 800 [158 Cal.Rptr. 238]; *Way, supra,* 74 Cal.App.3d at p. 181 (conc. opn. of Friedman, J.).) We conclude that the purpose of achieving equality and uniformity in felony sentencing is a legitimate public purpose to which the finality of the judgment must yield.[7]

---

[7] In view of our conclusion we need not reach petitioners' alternative argument that failure to apply the 2001 amendment to them would violate their right to equal protection.

### 4. *Retroactive Application of the 2001 Amendment Does Not Infringe the Governor's Pardon Power*

The People finally contend that retroactive application of the 2001 amendment would violate the separation of powers doctrine. *Way, supra,* 74 Cal.App.3d at pages 177–178, held that Penal Code section 1170.2 did not infringe the governor's pardon power because the motivation for the law was not to pardon, but to restructure punishment. The lessening of petitioners' sentences here is incidental to the legitimate motivation of correcting an anomaly in the law and likewise cannot be considered an infringement of the executive power.

### D. DISPOSITION

The order of the superior court granting petitioners' petitions for habeas corpus is affirmed.

Rushing, P. J., and Elia, J., concurred.