184 Cal.App.4th 408 (2010)
109 Cal.Rptr.3d 197
THE PEOPLE, Plaintiff and Respondent,
v.
JEFFREY DANIEL NORTON, Defendant and Appellant.
No. A123659.
Court of Appeals of California, First District, Division Three.
May 5, 2010.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*411 Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
JENKINS, J.
Appellant Jeffrey Daniel Norton entered a plea of no contest and was convicted of a felony offense of domestic violence. He appeals from the judgment of conviction, contending the evidence against him was the product of a warrantless search that violated his Fourth Amendment rights. We affirm the judgment, as we conclude that the evidence was lawfully obtained under the emergency aid exception to the warrant requirement. In addition, we hold that Norton is entitled to additional presentence conduct credit under the 2009 amendments to Penal Code section 4019,[1] as we conclude these amendments should be given retroactive effect.

FACTUAL AND PROCEDURAL BACKGROUND
In September 2008, the district attorney filed a criminal complaint against Norton alleging corporal injury to a cohabitant (§ 273.5, subd. (a)) and criminal threats (§ 422) as felony offenses, and misdemeanor battery (§ 243, subd. (e)(1)). Norton moved to suppress all the evidence against him on Fourth Amendment grounds (§ 1538.5).
The following evidence was presented at the preliminary hearing: Norton had been dating M.D. for six months and stayed periodically at her apartment. On September 24, 2008, at approximately 11:30 p.m., M.D. called police to report that her boyfriend was vandalizing her car. Fairfield police officers Jeremy Nipper and Chad Rowlett were dispatched to her residence and arrived within five minutes of her call. Officer Nipper did an area check but saw no one on the street and decided to obtain additional information from M.D. After the officer knocked on the door of M.D.'s apartment five or six times, Norton answered the door. Norton appeared agitated and said, "What the fuck do you want?" When Officer Nipper asked if M.D. was in the *412 apartment, Norton claimed she was asleep inside. The officer looked past Norton into the apartment but could not see anyone, as the apartment was dark.
Officer Nipper testified that he became concerned about M.D.'s welfare "because I couldn't see her ... [and] [Norton] was in an agitated state." The officer explained: "She had called about a vandalism, and the person responsible was her boyfriend. Upon contact, trying to get additional information as to his whereabouts, he answers the door, and that just raises my suspicion as to her welfare not knowing what had taken place prior to her reporting this vandalism or what could have occurred." Accordingly, after asking Norton to step outside and sit on the porch, Officer Nipper called into the apartment for M.D., but she did not respond. As the officer continued to call into the apartment, Norton grew more and more agitated, believing police were going inside. Norton asked why the officers were there, why they needed to go inside the apartment, and why they wanted to talk to M.D. As Norton's agitation mounted, he stopped complying with the direction to sit still and remain on the porch, so the officers handcuffed him to ensure their own safety. Officer Nipper noted a strong odor of alcohol on Norton.
Receiving no response from M.D., Officer Nipper called for backup so he and Officer Rowlett could go inside the apartment without leaving Norton unattended. While awaiting backup, Officer Nipper continued to call out for M.D., but she did not respond. Backup arrived within five minutes, and Officer Nipper entered M.D.'s apartment with Officer Rowlett. Officer Nipper discovered M.D. in the rear bedroom, crouching behind the bed where her young children were sleeping. Her legs were covered in bruises, and she appeared nervous and scared. She wanted to know where Norton was and did not want him to hear her talking to the officers. After Officer Nipper assured M.D. that Norton was outside with other officers, she explained that Norton had been drinking for the past few days and assaulted her numerous times during this period, hitting and kicking her repeatedly. M.D. said Norton told her during an argument, "Try driving offor try driving off now or try starting [your car] now." Believing he had vandalized her car, M.D. called the non-emergency number for police. She said she was afraid of Norton because he told her, "If you call the police, I'll fucking kill you."
A superior court judge acting as the magistrate (the magistrate) denied Norton's motion to suppress M.D.'s statements, the officers' observations regarding her physical condition, and her testimony, which Norton characterized as "exploitation of the illegal entry to the residence." The magistrate found that M.D.'s vandalism call implicating her boyfriend "is an inherently suspicious circumstance all by itself about what's going on at that moment [in] the relationship between these two parties." The magistrate observed, *413 further, that within five minutes of the call, Officer Nipper was confronted at the door by Norton with an "inherently pugnacious" response and obvious agitation. Noting Norton's increasing agitation as Officer Nipper called into the apartment, and the officer's inability to see or obtain a response from M.D., the magistrate concluded, "[A]ll of that adds up to an exigent circumstance that authorizes at that moment the officer to do a welfare check inside the house under the officer's community caretaking function." The magistrate held Norton to answer on all three counts and added another count of corporal injury to a cohabitant based on M.D.'s testimony. Norton was charged accordingly, in an information that asserted three prior convictions and two prior prison terms as sentence enhancements. He entered a plea of not guilty on all counts and denied the enhancement allegations.
In the trial court, Norton moved to set aside the information on Fourth Amendment grounds (§ 995), effectively seeking review of the magistrate's ruling regarding the validity of the search. Norton contended he had been committed without probable cause, as the only evidence against him was the product of an unconstitutional search. The trial court denied the motion. Shortly thereafter, Norton pleaded no contest to one count of corporal injury to a cohabitant (§ 273.5, subd. (a)), and the remaining counts and enhancement allegations were dismissed under the plea agreement. On December 17, 2008, the trial court sentenced Norton to the low term of two years and awarded him 127 days of presentence credit, consisting of 85 days of actual time in local custody and 42 days of conduct credit under former section 4019. Norton filed a timely notice of appeal from the judgment of conviction.
In October 2009, during the pendency of Norton's appeal, the Legislature amended section 4019 to afford additional presentence conduct credit to qualified prisoners. (Stats. 2009-2010, 3d Ex. Sess., ch. 28, § 50.) These amendments took effect on January 25, 2010, after submission of Norton's appeal but before it was decided. (Gov. Code, § 9600.) The next day, he filed a supplemental brief asking this court to vacate the submission to consider his entitlement to an additional 42 days of presentence conduct credit under section 4019, as amended, for a total of 169 days of presentence credit. We vacated the submission and requested supplemental briefing from the Attorney General on this issue. The Attorney General complied with our request, contending in his supplemental brief that Norton is not entitled to additional conduct credit because the amendments to section 4019 do not apply retroactively.

*414 DISCUSSION

I. The Evidence Against Norton Was the Product of a Lawful Search.[*]

II. Norton Is Entitled to Additional Credit Under Section 4019, As Amended.

A. The 2009 Amendments to Section 4019

(1) Under section 2900.5, a criminal defendant is entitled to credit against his term of imprisonment for all days he spends in custody, "including days credited to the period of confinement pursuant to Section 4019 ...." (§ 2900.5, subd. (a).) Section 4019 provides the method of calculating the credit to which a prisoner is entitled against his sentence for good behavior and work performance (conduct credit), based on his time in local custody after arrest and before sentence is imposed on a felony conviction.[8] (§ 4019, subd. (a)(4).) Under former section 4019, which was in effect when Norton was sentenced, a prisoner who had "satisfactorily complied with the reasonable rules and regulations ..." and had not "refused to satisfactorily perform labor as assigned ..." was entitled to two days of conduct credit for every four days spent in local custody. (Former § 4019, subd. (f) [prisoners are deemed to have served six days for every four days in actual custody]; see People v. Bravo (1990) 219 Cal.App.3d 729, 732 [268 Cal.Rptr. 486].) Applying this formula, the trial court awarded Norton 42 days of conduct credit for the 85 days he spent in local custody before sentencing. The following year, the Legislature amended section 4019, doubling the rate at which qualified prisoners accrue presentence conduct credit. (Stats. 2009-2010, 3d Ex. Sess., ch. 28, § 50.) Under section 4019 as amended, prisoners who are not required to register as sex offenders (§ 290 et seq.), were not committed for a serious felony (§ 1192.7), and do not have prior convictions for a serious felony (§ 1192.7) or a violent felony (§ 667.5) are entitled to two days of conduct credit for every two days they spend in local custody. (§ 4019, subd. (f) [qualified prisoners are deemed to have served four days for every *415 two days in actual custody].)[9] Norton contends he is entitled to 42 days of additional presentence conduct credit under the amended statute.
In considering whether Norton is entitled to the additional credit he seeks, the determinative issue is whether the amendments to section 4019 should be given retroactive application.[10] If these provisions operate retroactively, they apply to all qualified prisoners, including Norton, whose judgments of conviction are not yet final. (People v. Vieira (2005) 35 Cal.4th 264, 306 [25 Cal.Rptr.3d 337, 106 P.3d 990].)[11]

B. The Amendments Apply Retroactively Absent Clear Prospective Intent.

(2) "To ascertain whether a statute should be applied retroactively, legislative intent is the `paramount' consideration." (People v. Nasalga (1996) 12 Cal.4th 784, 792 [50 Cal.Rptr.2d 88, 910 P.2d 1380] (Nasalga).) Whether the Legislature intended a statute to operate retroactively is a question of law that we decide independently. (In re Chavez (2004) 114 Cal.App.4th 989, 994 [8 Cal.Rptr.3d 395].) In this case, the Legislature did not expressly state whether it intended that the amendments to section 4019 be given retroactive effect. We therefore look to other factors to discern legislative intent. (In re Estrada (1965) 63 Cal.2d 740, 744 [48 Cal.Rptr. 172, 408 P.2d 948] (Estrada).) We begin by considering the relevant principles, cited by each of the parties, that govern our analysis in this regard. The Attorney General relies on section 3 in contending we must presume the amendments to section 4019 were intended to apply prospectively only, absent express legislative intent or a "clear and unavoidable implication" to the contrary. (§ 3 ["No part of [the Penal Code] is retroactive, unless expressly so declared."].) Under section 3, "`[a] new statute is generally presumed to operate prospectively absent an express declaration of retroactivity or a clear and compelling implication that the Legislature intended otherwise. [Citation.]'") (People v. Alford (2007) 42 Cal.4th 749, 753 [68 Cal.Rptr.3d 310, 171 P.3d 32].) Norton maintains, however, relying on Estrada and its progeny, that "[a]bsent a saving clause, a *416 criminal defendant is entitled to the benefit of a change in the law during the pendency of his appeal." (People v. Rossi (1976) 18 Cal.3d 295, 299-300 [134 Cal.Rptr. 64, 555 P.2d 1313]; People v. Babylon (1985) 39 Cal.3d 719, 722 [216 Cal.Rptr. 123, 702 P.2d 205]; People v. Wright (2006) 40 Cal.4th 81, 90 [51 Cal.Rptr.3d 80, 146 P.3d 531], relying on People v. Trippet (1997) 56 Cal.App.4th 1532, 1544-1545 [66 Cal.Rptr.2d 559].) As the Attorney General concedes, the court in Estrada carved out an exception to section 3 when the Legislature enacts a provision lessening punishment: "`[W]here the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed'" (the rule in Estrada). (See Estrada, supra, 63 Cal.2d at p. 748.) The Attorney General contends the rule in Estrada does not apply here. The primary question before us, therefore, is whether the general presumption of prospectivity or the rule in Estrada controls our construction of section 4019, as amended.
(3) In Estrada, the court explained: "[Section 3] simply embodies the general rule of construction, coming to us from the common law, that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively. That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent." (Estrada, supra, 63 Cal.2d at p. 746.) The court emphasized that section 3 "is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent." (Estrada, at p. 746.) In considering an amendment reducing the penalty for a prison escape, the court concluded "the Legislature must have intended that the amendatory statute should operate in all cases not reduced to final judgment at the time of its passage." (Ibid.) The court reasoned: "When the Legislature amends a statute so as to lessen the punishment[,] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (Id. at p. 745.) In other words, "`[a] legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law ...,'" and when a lesser penalty has been deemed sufficient to satisfy the public interest, the Legislature obviously intends that no prisoner remain subject to the original, greater penalty. (Ibid.; see Nasalga, supra, 12 Cal.4th at p. 792 ["`Ordinarily, when an amendment lessens the punishment for a crime, one may reasonably infer the Legislature *417 has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest.'"], citing In re Pedro T. (1994) 8 Cal.4th 1041, 1045 [36 Cal.Rptr.2d 74, 884 P.2d 1022].) In these circumstances, "the rule of construction that statutes are normally to be interpreted to operate prospectively and not retroactively ... has been rebutted." (Estrada, at p. 747; accord, People v. Floyd (2003) 31 Cal.4th 179, 185 [1 Cal.Rptr.3d 885, 72 P.3d 820].) Accordingly, "when the Legislature amends a statute for the purpose of lessening the punishment, in the absence of clear legislative intent to the contrary, a criminal defendant should be accorded the benefit of a mitigation of punishment adopted before his criminal conviction became final." (In re Chavez, supra, 114 Cal.App.4th at p. 999.)
Thus, if section 4019, as amended, constitutes an "amendatory statute" that "mitigates punishment" within the meaning of Estrada, it will be given retroactive effect unless the Legislature has "clearly signal[ed] its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." (Nasalga, supra, 12 Cal.4th at p. 793.)
(4) We conclude that section 4019, as amended, is a statute lessening punishment, as it operates to reduce the sentences of qualified prisoners. Under section 4019, a prisoner accrues time for good conduct that is "deducted from his or her period of confinement ...." (§ 4019, subds. (b)(1) & (c)(1).) The amendments to this section increase the rate at which a prisoner accrues such time against his sentence, and, as the Attorney General concedes, "will necessarily shorten sentences ...." We are not persuaded a provision that necessarily reduces the sentences of qualified prisoners is any less an "amendatory statute that mitigates punishment" simply because it achieves this end by increasing sentencing credits. California courts have not limited Estrada's application to provisions that directly lessen the punishment for a particular offense.[12] Indeed, a majority of Courts of Appeal in California holds that provisions affording or increasing sentencing credit are statutes lessening punishment under Estrada. In People v. Hunter (1977) 68 Cal.App.3d 389, 392-394 [137 Cal.Rptr. 299] (Hunter), the Second District concluded that Estrada is not limited to amendments lessening a maximum sentence and held that amendments to section 2900.5 (custody credits) should be applied retroactively. The court stated: "The 1976 amendment to Penal Code section 2900.5 must be construed as one lessening punishment, as the term is used in Estrada. True, Estrada deals with a statute which lessens the maximum sentence for a particular crime while the amendment to section 2900.5 concerns credit against a lesser sentence imposed as a condition of probation. But in the circumstances which we here consider, the distinction is *418 without legal significance." (Hunter, at p. 393; accord, People v. Sandoval (1977) 70 Cal.App.3d 73, 87 [138 Cal.Rptr. 609]; People v. House (2010) 183 Cal.App.4th 1049 [giving retroactive application to § 4019, as amended].) Relying on Hunter, the Fourth District applied the rule in Estrada to section 4019, as originally enacted, treating its provision of conduct credits as a law "granting amelioration in punishment." (People v. Doganiere (1978) 86 Cal.App.3d 237, 239 [150 Cal.Rptr. 61] (Doganiere).) The Third District and Division Two of this court recently reached the same conclusion in considering the 2009 amendments to section 4019. (People v. Brown (2010) 182 Cal.App.4th 1354, 1363-1364 ["Whatever the ultimate purpose or purposes of the amendment to section 4019, the effect of the amendment is to reduce the overall time of imprisonment, and, thus, the punishment, for those less serious offenders who have demonstrated good behavior while in custody. A prisoner released from prison one day sooner has been punished one day less in prison than he would have been had there not been a change in the law."]; People v. Landon (2010) 183 Cal.App.4th 1096.)
As we conclude that section 4019, as amended, mitigates punishment, Estrada controls. Under Estrada, we deem the Legislature to have found the sentences reduced by the additional conduct credit "sufficient to meet the legitimate ends of the criminal law" for qualified prisoners. (Estrada, supra, 63 Cal.2d at p. 745.) The same "inevitable inference" follows: the Legislature intended the shorter sentences to apply retroactively. (Ibid.)
In so holding, we have considered but respectfully disagree with decisions to the contrary by our colleagues in the Fifth District. In People v. Brunner (1983) 145 Cal.App.3d 761, 764 [195 Cal.Rptr. 367], the Fifth District held an amendment that expressly afforded credit and repealed a statute precluding such credit was not a "statute lessening punishment." We find that this decision lacks persuasive force. The court relied on In re Kapperman (1974) 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657] (Kapperman), which struck down a provision applying a credit statute prospectively (§ 2900.5, subd. (c)) and distinguished cases like Estrada, which "involv[ed] the application to previously convicted offenders of statutes lessening the punishment for a particular offense." (Kapperman, supra, 11 Cal.3d at p. 546.) Kapperman does not hold, however, that Estrada has no application to statutes increasing sentencing credits; the court found Estrada inapposite because section 2900.5, subdivision (c) expressly stated the Legislature's intent. (Kapperman, supra, 11 Cal.3d at p. 546.) To the extent the Kapperman court's emphasis on "punishment" suggests an increase in credit does not lessen punishment, it was not necessary to the court's holding and is therefore dicta. (Ibid.; People v. Nguyen (2000) 22 Cal.4th 872, 879 [95 Cal.Rptr.2d 178, 997 P.2d 493].)
Similarly, in People v. Rodriguez (2010) 183 Cal.App.4th 1 (Rodriguez), the Fifth District held that Estrada did not apply to section 4019, as amended, *419 because "it is not obvious that the Legislature has determined the punishment for [qualified prisoners] was too severe, nor is it an inevitable inference that the Legislature intended its punishment-mitigating provisions to apply [retroactively]." (Rodriguez, at p. 7.) We do not find Rodriguez persuasive. First, the court in that case found it significant that the amendments to section 4019 lessen punishment "by allowing [qualified prisoners] to accrue conduct credits at a greater rate than other felons and not, as in Estrada, by reducing the penalty for a specific offense." (Rodriguez, at p. 8.) As noted above, in our view, this is a distinction without a difference. Second, we believe the court unduly emphasized the incentive effect of conduct credit in distinguishing such credit from "statutes which reduce punishment in other ways" (id. at p. 10) because "`it is impossible to influence behavior after it has occurred'" (id. at p. 8). The relevant question is the Legislature's intent in amending the statute, not the purpose for its initial enactment. In any case, the authority on which the court relied is distinguishable, as it emphasizes the purpose of conduct credit in addressing whether an express provision of prospectivity violated equal protection. (Ibid.; In re Stinnette (1979) 94 Cal.App.3d 800, 804-805 & fn. 3, 806 [155 Cal.Rptr. 912] [holding the credit's incentive purpose provides a reasonable basis for awarding it only prospectively].) The issue here is not whether a rational basis exists for a prospectivity provision, but whether we should infer a retroactive intent in the absence of such a provision.[13] Third, we do not agree that Estrada applies only if "it ... necessarily follow[s] that the Legislature determined the punishment ... was `too severe.'" (Rodriguez, supra, 183 Cal.App.4th at p. 9.) The issue is whether the Legislature has deemed a lesser punishment sufficient (Estrada, supra, 63 Cal.2d at p. 745); the policy reasons for such a finding do not diminish its significance. Finally, we find the court's analysis flawed to the extent it looks to the legislative history in determining whether Estrada applies in the first instance. (Rodriguez, supra, 183 Cal.App.4th at pp. 8-9.) The rule in Estrada turns on a statute's penalty-reducing effect, not a construction of other sources of legislative intent.[14]
*420 (5) Accordingly, we follow the majority of California courts in holding that section 4019, as amended, constitutes an amendatory statute mitigating punishment under Estrada. We believe this is the better view, as it adheres most closely to the holding in Estrada and the reasoning on which the court relied in that case.
Having concluded under Estrada that the general presumption of prospectivity has been rebutted, we must give retroactive effect to the amendments to section 4019 unless the Attorney General has shown a clear legislative intent of prospective application. (Estrada, supra, 63 Cal.2d at p. 748; In re Chavez, supra, 114 Cal.App.4th at p. 999; Nasalga, supra, 12 Cal.4th at p. 793 [burden to show "`the Legislature [has] demonstrate[d] its intention [to apply the amendments prospectively] with sufficient clarity that a reviewing court can discern and effectuate it'"], quoting In re Pedro T., supra, 8 Cal.4th at p. 1049.)[15] As the Attorney General does not contend a clear intent of prospectivity exists, confining his arguments to whether the presumption of prospectivity applies in the first instance, we hold that section 4019, as amended, operates retroactively. The statute, as amended, reflects a legislative policy decision that, in light of the budget crisis, the sentences reduced by additional conduct credit are sufficient for qualified prisoners and that the lesser punishment was intended to apply to "every case to which it constitutionally could apply...." (Estrada, supra, 63 Cal.2d at p. 745.)[16]
Accordingly, under section 4019, as amended, Norton is deemed to have served four days for every two days in local custody and is therefore entitled to a total of 84 days of conduct credit. (People v. Fry (1993) 19 Cal.App.4th 1334, 1341 [24 Cal.Rptr.2d 43].) The trial court awarded him 42 days of conduct credit under former section 4019, so he is entitled to an additional 42 days of conduct credit, for a total of 169 days of presentence credit.

*421 DISPOSITION
The judgment is affirmed. The matter is remanded to the trial court with instructions to amend the abstract of judgment to reflect the additional credit to which Norton is entitled and to deliver a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.
McGuiness, P. J., and Pollak, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion.
[1] All further statutory references are to the Penal Code unless otherwise specified.
[*] See footnote, ante, page 408.
[8] Section 4019 also provides credit for time spent in local custody (1) "under a judgment of imprisonment" in a criminal proceeding; (2) as a condition of probation after sentence is suspended; and (3) for a definite period for contempt in a non-criminal proceeding. (§ 4019, subd. (a)(1)-(3).) We limit our analysis to how the 2009 amendments affect the presentence conduct credits of state prison inmates (§ 4019, subd. (a)(4)).
[9] Prisoners within the exempt classes (i.e., sex offenders, serious or violent felons) will continue to receive two days credit for every four days in local custody. (§ 4019, subds. (b)(2), (c)(2) & (f) ["a term of six days will be deemed to have been served for every four days spent in actual custody ..."].)
[10] The Attorney General does not contend Norton is a sex offender or a serious or violent felon, ineligible for additional credit under section 4019, as amended. Accordingly, we assume Norton is otherwise qualified for additional credit under section 4019, as amended, and consider only whether the amended statute is retroactive in its application.
[11] "[F]or the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed." (People v. Vieira, supra, 35 Cal.4th at p. 306.)
[12] See, e.g., Nasalga, supra, 12 Cal.4th at page 795 (increasing the threshold for a sentence enhancement); People v. Vieira, supra, 35 Cal.4th at pages 305-306 (making a restitution fine "`subject to the defendant's ability to pay'").
[13] For the same reasons, we also reject the Rodriguez court's distinction between conduct credit and custody creditthe ground on which it distinguished Hunter, supra, 68 Cal.App.3d 389, and on which the Attorney General contends the reasoning in Doganiere, supra, 86 Cal.App.3d at page 240 is "unsound." (Rodriguez, supra, 183 Cal.App.4th at pp. 9-10 [distinguishing Hunter because it addressed custody credit, which was constitutionally required, rather than an incentive for good conduct].)
[14] For the same reason, we reject the Attorney General's argument that the presumption of prospectivity applies because the legislative history suggests a prospective intent. We find no merit in this contention in any case. The amendments to section 4019 were adopted as part of Senate Bill No. 3X 18 (2009-2010 3d Ex. Sess.). which was introduced at a special session called by the Governor on December 19, 2008, in response to a fiscal emergency. (Stats. 2009-2010, 3d Ex. Sess., ch. 28, § 50; see Governor's Proclamation to Leg., Sen. Daily J., Jan. 5, 2009, pp. 2-4.) It is evident the Legislature carefully crafted the bill to reduce prison populations, without compromising public safety. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 3X 18 (2009-2010 3d Ex. Sess.) as amended Aug. 31, 2009, p. 1 [Sen. Bill 3X 18 "makes changes related to public safety necessary to implement the Budget Revisions of the 2009 Budget."].) The bill provides early release to low-risk prisoners, reduces the number of new inmates by raising the felony property crime thresholds, and creates programs to reduce the number of failed probationers and return parolees. These measures serve a fiscal purpose, not a penological one, as the Attorney General contends, and we see no indication the additional conduct incentive provided by section 4019, as amended, is anything more than an incidental benefit.
[15] There is no saving clause, within the meaning of Estrada, that "expressly provide[s] that the old law should continue to operate as to past acts, so far as punishment is concerned." (Estrada, supra, 63 Cal.2d at p. 747.)
[16] In light of our conclusion in this regard, we need not decide whether limiting section 4019, as amended, to prospective application would violate equal protection.