Filed 8/3/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANGELIQUE ELANDRA NASH,<br><br>    Defendant and Appellant. | F079509<br><br>(Super. Ct. No. BF131808B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Michelle M. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amicus Curiae on behalf of Defendant and Appellant.

Cynthia J. Zimmer, District Attorney, Terrance J. McMahon and Terry P. Pelton, Deputy District Attorneys, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

## INTRODUCTION

In 2010, appellant Angelique Elandra Nash participated in a residential burglary during which one of her codefendants struck the elderly homeowner.[1] The victim later died as the result of blunt force trauma to the head. Appellant; her sister, Katila Nash; and her sister's boyfriend, David Moses, all of whom were under the age of 18 years at the time of the crime, were subsequently arrested and charged as adults in connection with the victim's murder. (Welf. & Inst. Code, § 707, former subd. (d)(1), (d)(2).) In her third trial, appellant was convicted of first degree felony murder with the special circumstance finding that the murder was committed while appellant was engaged in the commission of burglary. (Pen. Code, §§ 187, subd. (a), 189, 190.2, subds. (a)(17)(G) & (d).)[2, 3] Appellant was sentenced to 25 years to life in prison. (§ 190.5, subd. (b).)

In a prior opinion, this court reversed the jury's burglary special-circumstance finding on the ground it was unsupported by substantial evidence that appellant was a major participant in the underlying burglary, in accordance with the California Supreme Court's then-recent decision in *People v. Banks* (2015) 61 Cal.4th 788. Appellant's sentence remained 25 years to life in prison. (§ 190, subd. (a).)

On September 30, 2018, the Governor signed Senate Bill No. 1437 into law. Effective January 1, 2019, Senate Bill No. 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f) (Senate Bill

---

[1] We rely on our prior decision in the nonpublished opinion of *People v. Nash* (Aug. 14, 2015, F068239) for the factual and procedural history.

[2] Katila Nash and David Moses, both of whom entered the victim's house while appellant remained outside, were convicted in the first trial.

[3] All further statutory references are to the Penal Code unless otherwise specified.

2.

No. 1437 or Sen. Bill No. 1437).)  The bill amended sections 188 and 189, and added section 1170.95, which provides a process for those convicted of felony murder or murder under a natural and probable consequences theory to petition for relief based on the change to the law.  (Sen. Bill No. 1437, §§ 2–4.)

When Moses hit the victim inside her residence, appellant was outside acting as a lookout and, as previously stated, this court concluded she was not a major participant in the underlying burglary.  Following the enactment of Senate Bill No. 1437, appellant, represented by counsel, filed a petition under section 1170.95, subdivision (a), seeking relief from her felony murder conviction on the ground that she was "not the actual killer, did not act with the intent to kill, [and] was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  The prosecutor opposed the motion on the same grounds now advanced by respondent on appeal, as discussed in the sections that follow.

After hearing argument and taking the matter under submission, the trial court rejected the prosecutor's contentions that Senate Bill No. 1437 amends Proposition 115 (the Crime Victims Justice Reform Act) and Proposition 9 (the Victims' Bill of Rights Act of 2008:  Marsy's Law (Marsy's Law)) in violation of the California Constitution, but the court agreed that at least as to retroactive application, Senate Bill No. 1437 is an unconstitutional amendment of Proposition 7 (the Briggs Initiative).  The trial court dismissed appellant's petition and she filed a timely notice of appeal challenging the judgment.  (§ 1237.)

Appellant and the Attorney General, through an amicus brief, argue that Senate Bill No. 1437 is constitutional and urge reversal of the judgment.[4]  Respondent, the Kern County District Attorney, argues that Senate Bill No. 1437 is an unconstitutional

---

[4]     We grant appellant's unopposed requests for judicial notice of the ballot material for Proposition 7 and Proposition 115, and the prior record on appeal.  (Evid. Code, §§ 452, subd. (c), 459; *Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 22, fn. 10.)

amendment of Propositions 7, 115 and 9, and that it impermissibly infringes on powers vested in the judicial and executive branches of government, in violation of the separation of powers doctrine.

These arguments were considered and rejected by the Court of Appeal for the Fourth District, Division One, in *People v. Lamoureux* and *People v. Superior Court (Gooden).* (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 246 [Sen. Bill No. 1437 does not violate Props. 7, 115 or 9, or separation of powers doctrine] (*Lamoureux*); *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 289 [Sen. Bill No. 1437 does not violate Props. 7 or 115] (*Gooden*).)[5] Subsequently, the other Courts of Appeal considering these issues have agreed with the analyses in *Lamoureux* and *Gooden*. (*People v. Solis* (2020) 46 Cal.App.5th 762, 784 (*Solis*); *People v. Cruz* (2020) 46 Cal.App.5th 740, 747 (*Cruz*); accord, *People v. Lopez* (2020) 51 Cal.App.5th 589, 594; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 211; *People v. Johns* (2020) 50 Cal.App.5th 46, 54-55; *People v. Prado* (2020) 49 Cal.App.5th 480, 492; *People v. Smith* (2020) 49 Cal.App.5th 85, 91–92, review granted July 22, 2020, No. S262835; *People v. Bucio* (2020) 48 Cal.App.5th 300, 306.) We find the aforementioned decisions well-reasoned and persuasive, and we join them.

On the grounds set forth below, we conclude the trial court erred in finding that Senate Bill No. 1437 unconstitutionally amends Proposition 7. We also reject respondent's claims that Senate Bill No. 1437 unconstitutionally amends Proposition 115 and Proposition 9 and that it violates the separation of powers doctrine. Accordingly, we reverse the judgment and remand this matter for further proceedings under section 1170.95.

---

[5]     *Lamoureux* and *Gooden* were decided by the same panel, with one justice dissenting

## I. Claim Senate Bill No. 1437 Amends Voter Initiatives in Violation of California Constitution

### A. Constitutional Limitation on Amendment of Voter Initiatives

This appeal requires us to determine whether Senate Bill No. 1437, which effected changes to the Penal Code relating to murder, unconstitutionally amends Proposition 7, Proposition 115 or Proposition 9, all ballot initiatives passed by voters. When laws are enacted by voter initiative, subsequent legislative acts are limited by the California Constitution, which provides that "[t]he Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c); accord, *People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 568 (*Pearson*); *People v. Kelly* (2010) 47 Cal.4th 1008, 1025 (*Kelly*).)

"'[T]he purpose of California's constitutional limitation on the Legislature's power to amend initiative statutes is to "protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent." [Citation.]'" (*Kelly*, *supra*, 47 Cal.4th at p. 1025, quoting *Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1484 (*Proposition 103 Enforcement Project*).) "[C]ourts have a duty to ""jealously guard"" the people's initiative power, and hence to ""apply a liberal construction to this power wherever it is challenged in order that the right"" to resort to the initiative process ""be not improperly annulled"" by a legislative body." (*Kelly*, *supra*, at p. 1025, quoting *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 776.)

An amendment in this context has been described "as 'a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision.'" (*Pearson*, *supra*, 48 Cal.4th at p. 571; accord, *People v. Cooper* (2002) 27 Cal.4th 38, 44 (*Cooper*).) In contrast with the restrictions on amendment, the Legislature

5.

is not "precluded from enacting laws addressing the general subject matter of an initiative" (*Kelly*, *supra*, 47 Cal.4th at p. 1025), and it "remains free to address a '"related but distinct area"' [citations] or a matter that an initiative measure 'does not specifically authorize *or* prohibit'" (*id.* at pp. 1025–1026; accord, *Pearson*, *supra*, at p. 571).

## B.      Standard of Review

We review questions of statutory and voter initiative interpretation de novo (*People v. Gonzales* (2018) 6 Cal.5th 44, 49 (*Gonzales*); *John v. Superior Court* (2016) 63 Cal.4th 91, 95), and the same principles that govern statutes enacted by the Legislature apply to voter initiatives (*Gonzales*, *supra*, at p. 49; *Pearson*, *supra*, 48 Cal.4th at p. 571). "We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole.  If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language.  If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson*, *supra*, at p. 571; accord, *Gonzales*, *supra*, at pp. 49–50; *John v. Superior Court*, *supra*, at pp. 95–96.)

## C.      Overview of Senate Bill No. 1437

Senate Bill No. 1437 was enacted "to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (Stats. 2018, ch. 1015, § 1, subd. (e).)  The Legislature declared, as previously set forth, that it was necessary to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.*, subd. (f).)

6.

To that end, Senate Bill No. 1437 amended section 188, defining malice, and section 189, defining the degrees of murder, to address liability based on felony murder and the natural and probable consequences doctrine. As amended, section 188 now provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).)

Subdivision (e) of section 189, added by Senate Bill No. 1437, provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[; and] [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." However, subdivision (e) is inapplicable "when the victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties." (§ 89, subd. (f).)

Senate Bill No. 1437 also added section 1170.95 to the Penal Code, which provides, in relevant part: "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree

7.

or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a).)

If a petition is filed, as in this case, section 1170.95 provides that "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (*Id.*, subd. (c).) "[T]he court shall hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.…" (*Id.*, subd. (d)(1).)

### D. Proposition 7

#### 1. Background

Although the trial court rejected the prosecutor's other arguments, it agreed that at least as to retroactive application in this case, Senate Bill No. 1437 unconstitutionally amends Proposition 7 and it dismissed appellant's petition for relief under section 1170.95 on that ground. Appellant and the Attorney General claim error.

Proposition 7, which was passed by voters on November 7, 1978, repealed and replaced sections 190, 190.1, 190.2, 190.3, 190.4 and 190.5. (Voter Information Guide, Gen. Elec. (Nov. 7, 1978) text of Prop. 7, §§ 1–12, pp. 33, 41–46 (Voter Information Guide); see Cal. Const., art. IV, § 9 ["A section of a statute may not be amended unless

8.

the section is re-enacted as amended."].) Proposition 7 was a direct response to 1977 death penalty legislation (*People v. Boyce* (2014) 59 Cal.4th 672, 693; Voter Information Guide, *supra*, arguments in favor of and against Prop. 7, pp. 34–35), and it "substantially increase[d] the punishment for persons convicted of first and second degree murder" (*Cooper*, *supra*, 27 Cal.4th at p. 42; accord, *People v. Bright* (1996) 12 Cal.4th 652, 662, fn. 7 (maj. opn.), abrogated on another ground by *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6). Prior to the passage of Proposition 7, the punishment for first degree murder was death, life in prison without the possibility of parole or life in prison with the possibility of parole, and the punishment for second degree murder was five, six or seven years in prison. (Former § 190; Voter Information Guide, *supra*, § 1, p. 33.) Under Proposition 7, the punishment for first degree murder was increased to death, life in prison without the possibility of parole or 25 years to life in prison, and the punishment for second degree murder was increased to 15 years to life in prison. (§ 190; Voter Information Guide, *supra*, § 2, p. 33.)

Proposition 7 also "added several special circumstances to section 190.2 (see subds. (a)(8), (9), (11)–(16), (19)), expanded the list of felonies subject to the 'felony-murder' special circumstance, and deleted the requirement that a felony murder be willful, deliberate, and premeditated. (Compare former § 190.2, subd. (c)(3) (Stats. 1977, ch. 316, § 9, p. 1257) with present § 190.2, subd. (a)(17).) For the most part, these additions broadened the class of persons subject to the most severe penalties known to our criminal law." (*People v. Weidert* (1985) 39 Cal.3d 836, 844; accord, *People v. Spears* (1983) 33 Cal.3d 279, 281–282; *Gooden*, *supra*, 42 Cal.App.5th at p. 278; *People v. Epps* (1986) 182 Cal.App.3d 1102, 1121.)

Proposition 7 "did not authorize the Legislature to amend its provisions without voter approval." (*Cooper*, *supra*, 27 Cal.4th at p. 44, citing *In re Oluwa* (1989) 207 Cal.App.3d 439, 445–446 (*Oluwa*).) Therefore, as the parties recognize, amendment of Proposition 7 through legislative action is precluded by the California Constitution (Cal.

9.

Const., art. II, § 10, subd. (c)), and we must determine whether Senate Bill No. 1437 takes away from any provision of Proposition 7 (*Pearson*, *supra*, 48 Cal.4th at p. 571; accord, *Cooper*, *supra*, at p. 44).**6**

### 2. Analysis

In concluding that Senate Bill No. 1437 unconstitutionally amends Proposition 7, the trial court stated the Legislature was "attempting to accomplish indirectly what it cannot do directly" and "drastically reduce sentences for first and second degree murder as to particular individuals previously convicted of those crimes." Respondent agrees and the arguments she advances on appeal fall into the following general categories: Senate Bill No. 1437 changes the scope or effect of Proposition 7 by limiting the class of persons subject to sentencing for murder, thereby eliminating murder sentences as mandated by the voters; crime and punishment are not merely ""related but distinct area[s]"" the Legislature "remains free to address"; Proposition 7 froze or incorporated by reference murder as it was then defined in 1978; and Senate Bill No. 1437 frustrates voter intent. (*Kelly*, *supra*, 47 Cal.4th at p. 1025.)

### a. Senate Bill No. 1437 Does Not Take Away From Proposition 7's Provisions

We begin with the plain language of Proposition 7. (*Gonzales*, *supra*, 6 Cal.5th at p. 49; *Pearson*, *supra*, 48 Cal.4th at p. 571.) As summarized above and set forth by the Court of Appeal in *Gooden*, Proposition 7 provides in relevant part that "'[e]very person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life.… [¶] Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life.' (Prop. 7, § 2.) Additionally, the initiative expanded the special circumstances which can subject a person convicted of

---

**6**     Respondent does not claim that Senate Bill No. 1437 adds to Proposition 7 or substitutes any of its provisions.

10.

first degree murder to a punishment of death or LWOP.  (*Id.*, §§ 5–6.)  Each of these provisions increases the possible punishments for the offense of murder.  From the language of Proposition 7, therefore, it is apparent voters approved the initiative to enhance punishments for persons who have been convicted of murder." (*Gooden*, *supra*, 42 Cal.App.5th at pp. 280–281; accord, *Cruz*, *supra*, 46 Cal.App.5th at pp. 753–754; *Solis*, *supra*, 46 Cal.App.5th at pp. 772–773.)  The intended purpose of Proposition 7 to increase sentences for murder in general and to toughen the death penalty law in particular is clearly articulated in the ballot material, which describes the 1977 death penalty legislation as "weak and ineffective" and urges that "Proposition 7 will give every Californian the protection of the nation's toughest, most effective death penalty laws."  (Voter Information Guide, *supra*, argument in favor of Prop. 7, p. 34.)

Relying on *Proposition 103 Enforcement Project*, respondent argues that Senate Bill No. 1437 amends Proposition 7 by changing its """"the scope or effect ...."""" (*Prop. 103 Enforcement Project*, *supra*, 64 Cal.App.4th at pp. 1484–1485.)  Respondent reasons that because Senate Bill No. 1437 narrows the statutory definition of murder, it reduces the number of defendants eligible to be convicted of murder.  This, in turn, necessarily reduces the number of defendants serving sentences for murder as provided for in Proposition 7, evidencing change to the scope or effect of the initiative.

The scope or effect language underpinning respondent's argument traces back more than 40 years to *Franchise Tax Bd. v. Cory* (1978) 80 Cal.App.3d 772, a decision in which the Court of Appeal defined a statutory amendment as "'any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form ....'" (*Id.* at p. 776, quoting Sutherland, Statutory Construction (4th ed. 1972) § 22.01, p. 105.)  However, in *Kelly*, the California Supreme Court expressly questioned prior decisions defining amendment so broadly, including *Cory* (*Kelly*, *supra*, 47 Cal.4th

11.

at pp. 1026–1027 & fn. 19), and concluded that it was "sufficient to observe that for purposes of article II, section 10, subdivision (c) [of the California Constitution], an amendment includes a legislative act that changes an existing initiative statute by taking away from it[]" (*id.* at pp. 1026–1027). Thus, our analysis is necessarily guided by *Kelly*'s definition of amendment rather than by language parsed from an appellate court opinion and questioned by our high court. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 197–198, quoting *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["'Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction.'"]; accord, *Cruz*, *supra*, 46 Cal.App.5th at p. 750, fn. 3; *Solis*, *supra*, 46 Cal.App.5th at p. 772, fn. 2; *Gooden*, *supra*, 42 Cal.App.5th at p. 279, fn. 5.)

Respondent views the scope or effect language too broadly, disconnected from the plain language of Proposition 7 and Senate Bill No. 1437. In enacting Proposition 7, the voters mandated harsher punishment—that is, increased sentences—for those convicted of murder, but the measure did not speak to the substantive offense of murder. (*Gooden*, *supra*, 42 Cal.App.5th at p. 282; accord, *Cruz*, *supra*, 46 Cal.App.5th at p. 758; *Solis*, *supra*, 46 Cal.App.5th at pp. 775–776.) Respondent asserts that Senate Bill No. 1437 takes away, or eliminates, the sentence mandated by Proposition 7, but Senate Bill No. 1437 does not invalidate or otherwise change the sentence for murder dictated by the voters in enacting Proposition 7. Rather, Senate Bill No. 1437 restricts the bases for murder liability to those individuals who actually killed, who acted with the intent to kill, or who were major participants in the underlying felony and acted with reckless indifference to human life (§ 189, subd. (e)), and in those cases where the law affords relief, the underlying conviction no longer stands. While the class of individuals standing convicted of murder may be reduced in light of Senate Bill No. 1437's changes to the felony-murder rule and the natural and probable consequences doctrine, the legislation does not change or take away from the sentences those convicted of murder are subject to, which is the mandate of Proposition 7.

The authorities relied on by respondent in support of her argument—*People v. Armogeda* (2015) 233 Cal.App.4th 428; *Prop. 103 Enforcement Project*, *supra*, 64 Cal.App.4th 1473; and *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32—offer no assistance, either. In those decisions, the Courts of Appeal concluded that the legislation being challenged impermissibly amended prior voter initiatives, but the courts so held on the unremarkable grounds that rather than legislating in a merely related area, the challenged legislation clearly, directly and specifically added to or took away from the law that was enacted by the voters. (*People v. Armogeda*, *supra*, at pp. 434–436 [Postrelease Community Supervision Act of 2011 (the Act) unconstitutionally amended Prop. 36 where Prop. 36 mandated treatment rather than incarceration for certain nonviolent drug offenses or drug-related parole violations and the Act allowed for incarceration in those instances]; *Prop. 103 Enforcement Project*, *supra*, at pp. 1486–1494 [Legislature took away and changed scope and effect of Prop. 103 when it removed from Insurance Commissioner ratemaking determinations vested by the voters, and statute enacted did not further purposes of Prop. 103, as required for amendment]; *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West*, *supra*, at pp. 41–43 [the city's passage of an ordinance purportedly clarifying a comprehensive rent control measure enacted by voters was an unconstitutional amendment where the measure adequately defined its scope of coverage without need for any follow-up ordinances and ordinance went beyond clarification by expanding the scope of the measure and adding provisions to it].)

### b. Crime and Punishment are Related but Distinct Areas

As previously stated, the Legislature is not "precluded from enacting laws addressing the general subject matter of an initiative[]" (*Kelly*, *supra*, 47 Cal.4th at p. 1025), and it "remains free to address a '"related but distinct area"'" [citations] or a matter that an initiative measure 'does not specifically authorize *or* prohibit[]'" (*id.* at pp. 1025–1026; accord, *Pearson*, *supra*, 48 Cal.4th at p. 571). Respondent argues,

13.

however, that "[c]rimes and punishment are not 'related but distinct areas.'" As the *Gooden* court points out, this conflates the crime of murder with the punishment for murder. (*Gooden*, *supra*, 42 Cal.App.5th at p. 281; accord, *Cruz*, *supra*, 46 Cal.App.5th at p. 755; *Solis*, *supra*, 46 Cal.App.5th at p. 772.)

Crime and punishment are related, with the crime or offense necessarily informing the punishment, but they "plainly are not synonymous." (*Gooden*, *supra*, 42 Cal.App.5th at p. 281; §§ 15 [defining crime], 16 [kinds of crime], 18 [punishment], 19 [same], 19.2 [same], 19.4 [same].) A substantive offense defines or sets forth the elements of a crime (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 899; *Gooden*, *supra*, at p. 281, citing *People v. Anderson* (2009) 47 Cal.4th 92, 101), while "a punishment is the consequence of a finding of guilt intended to further the public policy goals of retribution and deterrence" (*Gooden*, *supra*, at p. 281, citing *People v. Ruiz* (2018) 4 Cal.5th 1100, 1107). As such, we agree with *Gooden* that "Senate Bill 1437 presents a classic example of legislation that addresses a subject related to, but distinct from, an area addressed by an initiative." (*Gooden*, *supra*, at p. 282; accord, *Cruz*, *supra*, 46 Cal.App.5th at p. 756.)

c. **Voters Neither Froze Nor Incorporated by Specific Reference Murder as it Stood in 1978**

Respondent also argues, as she did in the trial court, that "[w]hen the voters passed Proposition 7, which specifically referenced first and [second] degree murder, they incorporated those provisions (… §§ 187, 188, and 189) into Proposition 7 as those laws existed at that time," and that Senate Bill No. 1437 requires "a greater mental state for [first] degree murder than was required when Proposition 7 was overwhelmingly passed by voters." However, respondent's position is not supported by any authority on this point nor is it further elucidated. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1029 ["'"[E]very brief should contain a legal argument with citation of authorities on the points made."'"]; accord, *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335,

14.

363–364.) Appellant and the Attorney General agree the argument lacks merit, but they differ in their approaches.

Appellant characterizes the argument as analogous to that in *Californians for Political Reform Foundation v. Fair Political Practices Com.* (1998) 61 Cal.App.4th 472, 485 (*Californians for Political Reform Foundation*), which involved a challenge over the definition of the term "contribution." At issue was whether a Fair Political Practices Commission regulation that "excepted from the statutory definition of 'contribution' payments by a sponsoring organization to establish and administer its [political action committee (PAC)]" amended Proposition 208, a voter initiative that "prohibits a PAC from accepting from any person a contribution totaling more than $500 per calendar year." (*Id.* at pp. 480–481.) The plaintiff, in challenging the regulation, argued that "the electorate expressed its intent to 'freeze' into place [a] then-existing definition of 'contribution' in the regulations." (*Id.* at p. 485.) The Court of Appeal flatly rejected the argument, pointing out the plaintiff's failure to cite to any supporting evidence, the absence of any language in the initiative purporting to define or redefine the term, the absence of any language restricting the authority to regulate in the area in question, and the absence of anything in the ballot material evidencing voter intent on the issue. (*Ibid.*)

The Attorney General characterizes the issue as one of incorporation by reference. (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53 (*Palermo*).) In *Palermo*, the California Supreme Court stated, "'[W]here a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and … the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary.'" (*Id.* at pp. 58–59.) Conversely, "'where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but

also as they may be changed from time to time .…'" (*Id.* at p. 59.) However, "'[t]he *Palermo* rule is not to be applied in a vacuum'" (*People v. Fong* (2013) 217 Cal.App.4th 263, 267, quoting *People v. Pecci* (1999) 72 Cal.App.4th 1500, 1505), and the California Supreme Court has clarified that "where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, 'the determining factor will be … legislative intent[]'" (*In re Jovan B.* (1993) 6 Cal.4th 801, 816; accord, *People v. Fong*, *supra*, at p. 267; *Doe v. Saenz* (2006) 140 Cal.App.4th 960, 981).

The absence of both supporting authority and more specific legal argument leave the contours of respondent's theory undeveloped, but regardless, we agree with appellant's and the Attorney General's position that the argument lacks merit. There is nothing in the plain language of Proposition 7, or in the ballot material, that suggests voters, in calling for harsher punishment for those convicted of murder, intended to "'freeze'" the substantive offense of murder as it was understood in 1978. (*Californians for Political Reform Foundation*, *supra*, 61 Cal.App.4th at p. 485.) The absence of any support in the plain language or ballot material also dooms respondent's contention that the reference to murder in Proposition 7 specifically incorporated by reference the substantive offense of murder as it stood in 1978. (*In re Jovan B.*, *supra*, 6 Cal.4th at p. 816; accord, *People v. Fong*, *supra*, 217 Cal.App.4th at p. 267; *Doe v. Saenz*, *supra*, 140 Cal.App.4th at p. 981.)

In *Gooden*, the Court of Appeal found the California Supreme Court's decision in *People v. Hernandez* instructive and we agree. (*Gooden*, *supra*, 42 Cal.App.5th at p. 283, citing *People v. Hernandez* (2003) 30 Cal.4th 835, 864–865, disapproved on another ground by *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32, disapproved on another ground by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) In *People v. Hernandez*, the court, addressing the crime of conspiracy, considered the following language, added by the Legislature in 1955: "[W]hen two or more persons conspire to commit murder, 'the punishment shall be that *prescribed for murder in the first degree*.'" (*People v.*

*Hernandez*, *supra*, at p. 864, quoting § 182.) At that time—1955—"the punishment for conspiracy to commit murder was death or life imprisonment, at the discretion of the jury or the court." (*Ibid.*, citing former § 190.) The court agreed with the parties that the statutory reference to the penalty for murder was general rather than specific and the statute "incorporates whatever punishment the law prescribed for first degree murder when the conspiracy was committed." (*Id.* at p. 865.) Proposition 7's reference to first and second degree murder is analogous to the reference found to be general in *People v. Hernandez.* (*Gooden*, *supra*, at p. 283.)

*Gooden* also observed, "If the drafters of Proposition 7 had intended to incorporate the definition of murder as the offense was understood in 1978, we expect the initiative, at minimum, would have cited or referred to the statutory provisions defining murder (§ 187), malice (§ 188), or the degrees of murder (§ 189)." (*Gooden*, *supra*, 42 Cal.App.5th at p. 283; accord, *Californians for Political Reform Foundation*, *supra*, 61 Cal.App.4th at p. 485 ["If in fact it were the intent of the proponents of the initiative to freeze into place the then-existing regulatory definition of 'contribution,' it would have been easy enough to do so."].) "Further, Proposition 7 did not include any time-specific limitations when referring to first or second degree murder, as we might expect if the voters had intended to permanently wall off the definition of murder from future consideration by the Legislature." (*Gooden*, *supra*, at p. 283; accord, *Californians for Political Reform Foundation*, *supra*, at p. 485.)

Also instructive is the decision in *Oluwa*, which interpreted the following language added to section 190 under Proposition 7: "'The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code [article 2.5] shall apply to reduce any minimum term of 25 or 15 years in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time.'" (*Oluwa*, *supra*, 207 Cal.App.3d at p. 442.) The defendant in *Oluwa* claimed that Proposition 7 authorized him to receive more liberal custody credits

17.

under section 2933, which was added to article 2.5 several years after the passage of Proposition 7. (*Oluwa*, *supra*, at pp. 442–444.) The Court of Appeal disagreed, concluding that Proposition 7 specifically incorporated by reference an article of the Penal Code, which at the time contained only sections 2930, 2931 and 2932. (*Oluwa*, *supra*, at p. 445; accord, *Cooper*, *supra*, 27 Cal.4th at p. 44.) Further, the *Oluwa* court observed, "[T]he legislative analysis accompanying the initiative specifically addressed the availability of conduct credits and advised voters that those persons sentenced to 15 years to life in prison would have to serve a minimum of 10 years before becoming eligible for parole. Thus, contrary to [the defendant's] assertion, the electorate clearly intended service of 10 calendar years by a second degree murderer before parole consideration." (*Oluwa*, *supra*, at p. 445; accord, *Cooper*, *supra*, at p. 45.)[7]

In contrast with the article 2.5 credits at issue in *Oluwa*, Proposition 7 contains no such specific references with respect to the substantive offenses of first and second degree murder, and the ballot material contains nothing suggesting any such intent. Thus, whether characterized as freezing the law of murder as it was in 1978 (*Californians for Political Reform Foundation*, *supra*, 61 Cal.App.4th at p. 485), or incorporating the law of murder as it was in 1978 by specific reference (*Palermo*, *supra*, 32 Cal.2d at pp. 58–59), neither the plain language of Proposition 7 nor the ballot material supports respondent's position.

Finally, to the extent that respondent's argument suggests mere reference to first and second degree murder in the statutes amended by Proposition 7 evidences voters' knowledge of the definition of murder and intent to preserve that definition as it existed

---

[7]    In *Cooper*, the California Supreme Court, while agreeing that the reference to article 2.5 in Proposition 7 is specific rather than general, distinguished the *postsentence* credits at issue in *Oluwa* (*Cooper*, *supra*, 27 Cal.4th at p. 44) and concluded that "the trial court's restriction of *presentence* conduct credits under section 2933.1 [was] not inconsistent with former section 190 and [did] not otherwise circumvent the intent of the electorate in adopting the Briggs Initiative[]" (*id.* at p. 48).

in 1978, we are unpersuaded. Under the California Constitution, "a statute must be reenacted in full as amended if any part of it is amended." (*County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 206 (*Com. on State Mandates*), citing Cal. Const., art. IV, § 9; accord, *People v. Guzman* (2019) 8 Cal.5th 673, 686; Gov. Code, § 9605, subd. (a).) In *Com. on State Mandates*, the California Supreme Court explained, "When technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process. This conclusion applies *unless* the provision is integral to accomplishing the electorate's goals in enacting the initiative or other indicia support the conclusion that voters reasonably intended to limit the Legislature's ability to amend that part of the statute. This interpretation of article II of the Constitution is consistent with the people's precious right to exercise the initiative power. [Citation.] It also comports with the Legislature's ability to change statutory provisions outside the scope of the existing provisions voters plausibly had a purpose to supplant through an initiative." (*Id.* at p. 214.) Here, the references to first and second degree murder were confined to technical restatements of the statutes, in accordance with the California Constitution and Government Code section 9605.

### d. Voter Intent Not Ascertainable from Silence on Matter

Finally, respondent contends that "[t]he concern expressed in the arguments, together with the significant changes made to the penalties for murder, make clear the intent of the electorate to secure the community against violent crime by imposing longer prison terms or the death penalty on defendants who were convicted of murder. Under no reading of the arguments, the Legislative Analyst's discussion or the proposition itself did the people express a willingness or desire to permit the Legislature to re-define what is required for murder so as to narrow the range of offenders to which it would apply."

19.

While we agree with the first proposition, the second is contrary to established principles governing statutory interpretation.

It bears repeating that "[i]f the statutory language is not ambiguous, then the plain meaning of the language governs.  [Citation.]  If, however, the statutory language lacks clarity, we may resort to extrinsic sources, including the analyses and arguments contained in the official ballot pamphlet, and the ostensible objects to be achieved." (*People v. Lopez* (2005) 34 Cal.4th 1002, 1006; accord, *People v. Ruiz*, *supra*, 4 Cal.5th at p. 1106; *Robert L. v. Superior Court*, *supra*, 30 Cal.4th at p. 901; *Gooden*, *supra*, 42 Cal.App.5th at p. 284.)  "[W]e may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language." (*Pearson*, *supra*, 48 Cal.4th at p. 571; accord, *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 210 (*Wishnev*); *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 350.)

Here, respondent's argument is not founded on any language in Proposition 7 or information in the ballot material.  Instead, respondent purports to divine the electorate's intent on this issue from its silence.  Respondent's argument, in other words, is purely speculative.  (*People v. Laird* (2018) 27 Cal.App.5th 458, 465; *Citizens Assn. of Sunset Beach v. Orange County Local Agency Formation Com.* (2012) 209 Cal.App.4th 1182, 1191 ["Just as the silence of a dog trained to bark at intruders suggests the absence of intruders, this silence speaks loudly.  It is indicative of a lack of voter intent .…"].)

As explained in *Gooden*, the ballot materials "all concern the issue of punishment.  By contrast, they are silent on the critical issues addressed by Senate Bill 1437.  They do not mention the mens rea element of murder or any other requirement necessary for a person to be liable for murder.  They do not mention section[s] 187 (defining murder), 188 (defining malice), or 189 (defining the degrees of murder).  Further, they do not discuss the felony-murder rule or the natural and probable consequences doctrine.  These ballot materials buttress our conclusion that voters intended Proposition 7 to strengthen the punishments for persons convicted of murder, not to reaffirm or amend the

substantive offense of murder." (*Gooden, supra*, 42 Cal.App.5th at p. 285; accord, *Cruz, supra*, 46 Cal.App.5th at p. 756.)[8]

### e.      Retroactive Petition Process Under Section 1170.95

Respondent also argues that even if prospective application of Senate Bill No. 1437 passes constitutional muster, retroactive application does not. Respondent contends that voter intent to increase sentences for first and second degree murder "unquestionably precludes the Legislature from retroactively redefining murder to vacate convictions that were lawful at the time they were entered, reducing the punishment that the electorate mandated for murder and effectively granting a legislative commutation." "[T]he voters unquestionably intended that those convicted of murder received life until that sentence was lawfully changed."

Respondent asserts that separating the offense of murder from the punishment requires parsing Proposition 7 with "'*artificial, scalpel-like precision*'" but we disagree. As we have explained, the Legislature may address related areas of law and respondent's arguments improperly conflate the crime with the punishment. Voters were concerned with ensuring harsh sentences for those convicted of murder, but in enacting Proposition 7, they did not purport to address the substantive offense of murder and thus

---

[8]      Respondent mentions that the Legislature "further ignored the Legislative Counsel's advice in pursuit of this unconstitutional assertion of legislative primacy over the voters' will." This passing reference pertains to a letter submitted as an exhibit to the People's opposition to appellant's section 1170.95 petition in the trial court. On appeal, respondent does not place any great weight on the letter, but we note that the letter takes the position we have already rejected: by reducing the class of individuals who may be convicted of murder, Senate Bill No. 1437 amends Proposition 7 by one, changing its scope and two, changing the definition of murder relied on by the voters. The Court of Appeal in *Gooden* addressed the letter, noting uncertainty surrounding whether the letter pertained to Senate Bill No. 1437 or Assembly Bill No. 3104, which was not enacted but would have, in relevant part, amended sections 189, 190 and 190.2. (*Gooden, supra*, 42 Cal.5th at p. 285; Assem. Bill No. 3104 (2017-2018 Reg. Sess.).) *Gooden* concluded that regardless, the letter was neither binding nor persuasive. (*Gooden, supra*, at p. 285; *St. John's Well Child & Family Center v. Schwarzenegger* (2010) 50 Cal.4th 960, 982 ["'[A]n opinion of the Legislative Counsel is entitled to respect, [but] its weight depends on the reasons given in its support.'"].) As stated, we have already addressed and rejected the reasoning set forth in the letter and nothing in the letter persuades us to the contrary.

did not preclude or otherwise restrict the Legislature from acting in this related area. Critically, section 1170.95 does not provide for resentencing a defendant who stands convicted of murder, but for resentencing a defendant whose murder conviction has been vacated based on a change to the offense of murder. (*Id.*, subd. (a).) In our view, this is a distinction with a difference.

In rejecting this line of attack advanced by respondent, the *Gooden* court reasoned that it "assumes a petitioner's murder conviction is fixed and the resentencing procedure merely provides an avenue by which a petitioner may obtain a more lenient sentence for the extant conviction. However, that is not the case. The effect of a successful petition under section 1170.95 ""is to vacate the judgment … as if no judgment had ever been rendered."" [Citations.] Thus, the resentencing procedure established by section 1170.95—like the remainder of the statutory changes implemented by Senate Bill 1437—does not amend Proposition 7." (*Gooden*, *supra*, 42 Cal.App.5th at p. 286, quoting *People v. Martinez* (2017) 10 Cal.App.5th 686, 718 & citing *People v. Sumstine* (1984) 36 Cal.3d 909, 920.) We agree with respondent that "'[t]he voters should get what they enacted, not more and not less[]'" (*Pearson*, *supra*, 48 Cal.4th at p. 571), but Senate Bill No. 1437 does not deprive them of what they enacted.

### E.     Proposition 115

#### 1.     Background

Next, in 1990, voters enacted Proposition 115, entitled the Crime Victims Justice Reform Act, "to adopt 'comprehensive reforms … needed in order to restore balance and fairness to our criminal justice system'" (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 340, quoting Voter Information Guide, Primary Elec. (June 5, 1990) text of Prop. 115, §§ 1–30, pp. 33, 65–69), and "[t]o achieve that purpose, the measure adopts a variety of changes and additions to [the] state Constitution and statutes[]" (*Raven v. Deukmejian*, *supra*, at p. 340). Relevant to the constitutional challenge at issue in this appeal, Proposition 115 amended section 189 to add the following offenses to the felony-murder

rule: kidnapping, train wrecking and sex offenses under sections 286, 288, 288a and 289. (Voter Information Guide, *supra*, text of Prop. 115, *supra*, § 9, p. 66; *Raven v. Deukmejian*, *supra*, 52 Cal.3d at p. 344.)[9] Voters provided that Proposition 115 may be amended only "by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors[]" (Voter Information Guide, *supra*, text of Prop. 115, § 30, p. 69).

### 2. Analysis

The trial court rejected the prosecution's claim that Senate Bill No. 1437 unconstitutionally amends Proposition 115, but on appeal, respondent renews the argument. Respondent acknowledges that Proposition 115 did not alter section 189 other than to add five crimes to the felony-murder rule, that the amendment to section 189 necessitated a full reenactment of the statute pursuant to the California Constitution, and that with respect to technical reenactments involving no substantive change, "the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process." (*Com. on State Mandates*, *supra*, 6 Cal.5th at p. 214, citing Cal. Const., art. IV, § 9.) However, respondent contends that "'[t]his conclusion applies *unless* the provision is integral to accomplishing the electorate's goals in enacting the initiative or other indicia support the conclusion that voters reasonably intended to limit the Legislature's ability to amend that part of the statute[] (*Com. on State Mandates*, *supra*, at p. 214, italics in original),'" and here, the voters permitted the Legislature to amend Proposition 115 only "by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors[]" (Voter Information Guide, *supra*, text of Prop. 115, § 30, p. 69). Respondent also contends that Proposition 115 did not merely

---

[9] Section 288a was subsequently renumbered to section 287. (Stats, 2018, ch. 423, § 49.)

23.

reenact section 189 because "[r]emoving culpability from accomplices and felony murder cannot be said to be anything other than at odds with" the goals of just punishment for violent criminals and comprehensive reform needed to restore balance and fairness to the criminal justice system.

Distilled to its essence, respondent's claim is that rather than a technical reenactment, the measure "directly amended" section 189 and requires a two-thirds majority in both houses for legislative amendment, thereby precluding the Legislature from making *any* substantial changes to section 189. We reject the argument.

Proposition 115 expanded the scope of the felony-murder rule by adding five qualifying felonies, but effected no other substantive change to section 189 and the technical reenactment of section 189 in full, required by the California Constitution, did not insulate section 189 from any and all future changes by the Legislature. To the contrary, the Legislature retains authority to amend through the ordinary legislative process unless the provision at issue—here, the elements of murder—is integral to the electorate's goal in enacting the earlier measure or there is some other indication that the voters intended to limit the Legislature's ability to amend the provision at issue via the ordinary legislative process. (*Com. on State Mandates*, *supra*, 6 Cal.5th at p. 214.) To find otherwise is directly contrary to the California Supreme Court's conclusion in *Com. of State Mandates*, which included the following observation: "Imposing such a limitation as a matter of course on provisions that are merely technically restated would unduly burden the people's willingness to amend existing laws by initiative." (*Ibid.*)

The relevant question is whether Senate Bill No. 1437 impermissibly amends Proposition 115 by taking away from the change to section 189 mandated by the voters in enacting the measure. (*Kelly*, *supra*, 47 Cal.4th at p. 1027.) As the change to section 189 effected by Senate Bill No. 1437 does not take away from or alter the scope of the felony-murder rule with respect to qualifying offenses, it does not amend Proposition 115.

24.

(*Gooden*, *supra*, 42 Cal.App.5th at p. 287; accord, *Cruz*, *supra*, 46 Cal.App.5th at p. 747; *Solis*, *supra*, 46 Cal.App.5th at p. 773.).)

We perceive no ambiguity with the text of Proposition 115 and respondent does not argue otherwise, but we note that the absence of any indication that Senate Bill No. 1437 thwarts the voters' intent in enacting Proposition 115. Respondent asserts that Proposition 115 added language to section 190.2, subdivisions (c) and (d), that is nearly identical to section 189, subdivision (e), added by Senate Bill No. 1437, and she argues that "[h]ad the voters wanted the additional requirements for accomplices to apply to … § 189, they would have codified it as such." However, "'[w]e cannot presume that … the voters intended the initiative to effect a change in law that was not expressed or strongly implied in either the text of the initiative or the analyses and arguments in the official ballot pamphlet.'" (*People v. Valencia* (2017) 3 Cal.5th 347, 364.)

Here, the stated goals of the initiative were "to restore balance to our criminal justice system, to create a system in which justice is swift and fair, and to create a system in which violent criminals receive just punishment, in which crime victims and witnesses are treated with care and respect, and in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools." (Voter Information Guide, *supra*, text of Prop. 115, § 1, p. 33.) The arguments in favor of Proposition 115 generally focused on cutting down on costs and delays in the criminal justice system, and on improving the death penalty law. (*Id.* at pp. 34–35.) Neither the text of Proposition 115 nor the ballot material speaks to the elements of murder and as that matter was not before the voters, we cannot speculate as to their thoughts on it. (*People v. Valencia*, *supra*, 3 Cal.5th at p. 380.)

### F.    Proposition 9

#### 1.    Background

Respondent also claims that the section 1170.95 petition process available to those convicted of felony murder or murder under a natural and probable consequences theory

violates the California Constitution as amended by Proposition 9, a crime victims' rights initiative known as Marsy's Law. (*In re Vicks* (2013) 56 Cal.4th 274, 282; *Santos v. Brown* (2015) 238 Cal.App.4th 398, 404.) The stated purpose of Proposition 9, enacted by voters in 2008, is to "[p]rovide victims with rights to justice and due process[,]" and to "[i]nvoke the rights of families of homicide victims to be spared the ordeal of prolonged and unnecessary suffering, and to stop the waste of millions of taxpayer dollars, by eliminating parole hearings in which there is no likelihood a murderer will be paroled, and to provide that a convicted murderer can receive a parole hearing no more frequently than every three years, and can be denied a follow-up parole hearing for as long as 15 years." (Voter Information Guide, *supra*, text of Prop. 9, § 3, ¶¶ 1–2, p. 129.)

The measure "includes both constitutional and statutory amendments. The constitutional provisions recognize various rights of victims of crime and of the people of California" (*In re Vicks*, *supra*, 56 Cal.4th at p. 282), while "[m]ost of the law's statutory amendments relate to parole" (*id.* at p. 283). The voters limited the legislative amendment of Proposition 9 as follows: "The statutory provisions of this act shall not be amended by the Legislature except by a statute passed in each house by roll-call vote entered in the journal, three-fourths of the membership of each house concurring, or by a statute that becomes effective only when approved by the voters. However, the Legislature may amend the statutory provisions of this act to expand the scope of their application, to recognize additional rights of victims of crime, or to further the rights of victims of crime by a statute passed by a majority vote of the membership of each house." (Voter Information Guide, *supra*, text of Prop. 9, § 9, p. 132.)

Respondent claims that the petition process under section 1170.95 is unconstitutional because it violates the right of crime victims to finality of judgment and does not consider the safety of victims, their families and the public with respect to release. Relevant to these claims, Proposition 9 amended the California Constitution to include the following findings and declarations: "The rights of victims also include

26.

broader shared collective rights that are held in common with all of the People of the State of California and that are enforceable through the enactment of laws and through good-faith efforts and actions of California's elected, appointed, and publicly employed officials.…" (Cal. Const., art. I, § 28, subd. (a)(4).) Further, "[v]ictims of crime are entitled to finality in their criminal cases. Lengthy appeals and other post-judgment proceedings that challenge criminal convictions, frequent and difficult parole hearings that threaten to release criminal offenders, and the ongoing threat that the sentences of criminal wrongdoers will be reduced, prolong the suffering of crime victims for many years after the crimes themselves have been perpetrated. This prolonged suffering of crime victims and their families must come to an end." (*Id.*, subd. (a)(6).)

Proposition 9 also amended the California Constitution to provide that victims are entitled "[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings" (Cal. Const., art. I, § 28, subd. (b)(9)), and "[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made" (*id.*, subd. (b)(16)).

### 2. Finality

With respect to postconviction release proceedings and decisions, Proposition 9 provides victims with the right to notice, to be present and to be heard. (*Lamoureux*, *supra*, 42 Cal.App.5th at pp. 264–265, citing Cal. Const., art. I, § 28, subd. (b)(7), (b)(8).) Thus, although Proposition 9 provides victims with the right to "prompt and final conclusion of … any related postjudgment proceedings" (Cal. Const., art. I, § 28, subd. (b)(9)), the measure "did not foreclose post-judgment proceedings altogether" and instead "expressly contemplated the availability of such postjudgment proceedings .…" (*Lamoureux*, *supra*, at pp. 264–265.) Consistent with this interpretation, other postjudgment proceedings enacted after 2008 have specifically recognized the existence of victims' rights under Proposition 9. (*Id.* at p. 265, citing § 1170.126, subd. (m) & *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1300 [Prop. 36;

27.

§ 1170.18, subd. (o) [Prop. 47]; § 1170.91, subd. (b)(6) [providing recall and resentencing process for current or former military members suffering from certain mitigating problems or conditions].)

As the court in *Lamoureux* stated, "[i]t would be anomalous and untenable for us to conclude, as the People impliedly suggest, that the voters intended to categorically foreclose the creation of any new postjudgment proceedings not in existence at the time Marsy's Law was approved simply because the voters granted crime victims a right to a 'prompt and final conclusion' of criminal cases." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 265, quoting Cal. Const., art. I, § 28, subd. (b)(9), fn. omitted.) We agree. Neither the plain language of the initiative nor the ballot material suggests that in enacting Proposition 9, voters intended to prohibit the Legislature from creating new postjudgment proceedings. (*Pearson*, *supra*, 48 Cal.4th at p. 571.)

Moreover, subdivisions (c) and (d)(1) of section 1170.95 provide specific time limits, which may be extended only upon a showing of good cause. This ensures victims receive a prompt and final conclusion with respect to postjudgment proceedings initiated under section 1170.95. (*Lamoureux*, 42 Cal.App.5th at p. 265, fn. 6.)

### 3. Public Safety Considerations

As well, *Lamoureux*, assuming without deciding that the petition process under section 1170.95 qualifies as a postjudgment release decision, rejected the claim that the process infringes on the "right '[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made.'" (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 265, quoting Cal. Const., art. I, § 28, subd. (b)(16).). The court explained, "The People are correct that the safety of the victim and the public are not pertinent to whether a court may vacate the petitioner's murder conviction and resentence the petitioner." (*Lamoureux*, *supra*, at p. 265.) However, under section 1170.95, subdivision (d), "[i]f a court rules a petitioner is entitled to vacatur of his or her murder conviction, it must then resentence the petitioner on any remaining

28.

counts. [Citation.] During resentencing, the court may weigh the same sentencing factors it considers when it initially sentences a defendant, including whether the defendant presents 'a serious danger to society' and '[a]ny other factors [that] reasonably relate to the defendant or the circumstances under which the crime was committed.' (Cal. Rules of Court, rule 4.421(b)(1), (c).) At minimum, [therefore,] the trial court's ability to consider these factors during resentencing ensures the safety of the victim, the victim's family, and the general public are 'considered,' as required by Marsy's Law. (Cal. Const., art. I, § 28, subd. (b)(16).)" (*Lamoureux*, *supra*, at p. 266.)

### 4. Findings and Declarations Under Subdivision (a)

Finally, respondent cites subdivisions (a)(4) and (a)(6) of article I, section 28 of the California Constitution, quoted in part I.C.1. of the Discussion, in support of her argument. However, unlike subdivision (b), which sets forth victims' rights that are enforceable under subdivision (c) in any court having jurisdiction over the case, the findings and declarations set forth in subdivision (a) are "not an independent source of enforceable rights." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 266, citing *People v. Superior Court (Johnson)* (2004) 120 Cal.App.4th 950, 956; see *Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 792–793 [statutory findings and declarations provided guidance in carrying out bill's provisions, not binding limitations].) Likewise, to the extent that respondent's argument relies on the preamble in sections 2 and 3 of Proposition 9, these findings and declarations and statements of purpose and intent ""'"do not confer power, determine rights, or enlarge the scope of [the] measure."'"" (*Lamoureux*, *supra*, at p. 266, quoting *People v. Guzman* (2005) 35 Cal.4th 577, 588.) Accordingly, on these grounds, we reject respondent's claim that section 1170.95 violates Proposition 9.

**II.     Claim Senate Bill No. 1437 Violates Separation of Powers Doctrine**

**A.     Separation of Powers Doctrine**

Next, respondent argues that the petition process under section 1170.95 violates the separation of powers doctrine by impermissibly intruding into a core judicial function insofar as it requires that convictions be vacated even in cases in which judgment is final. Respondent also argues that the availability of relief in cases in which judgment is final usurps the governor's pardon power.

"The California Constitution establishes a system of state government in which power is divided among three coequal branches (Cal. Const., art. IV, § 1 [legislative power]; Cal. Const., art. V, § 1 [executive power]; Cal. Const., art. VI, § 1 [judicial power]), and further states that those charged with the exercise of one power may not exercise any other (Cal. Const., art. III, § 3)." (*People v. Bunn* (2002) 27 Cal.4th 1, 14 (*Bunn*).)  The primary purpose of the separation of powers doctrine "'is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government[]'" (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 557), as well as to avoid overreaching by one governmental branch against another (*Bunn*, *supra*, at p. 16). While there is some interdependence among the branches, the Constitution "does vest each branch with certain 'core' [citation] or 'essential' [citation] functions that may not be usurped by another branch."  (*Id.* at p. 14.)

"'Although the language of California Constitution article III, section 3, may suggest a sharp demarcation between the operations of the three branches of government, California decisions long have recognized that, in reality, the separation of powers doctrine "'does not mean that the three departments of our government are not in many respects mutually dependent'" [citation], or that the actions of one branch may not significantly affect those of another branch.'"  (*Briggs v. Brown* (2017) 3 Cal.5th 808, 846, quoting *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52.)  Instead, it is violated "only when the actions of a branch of government defeat or materially

impair the inherent functions of another branch." (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662.)

### B.  Material Impairment of Core Judicial Function

We turn first to respondent's argument that the retroactive petition process under section 1170.95 intrudes into a core judicial function insofar as it authorizes relief in cases in which judgment is final.  "Our Constitution vests '[t]he legislative power of this State … in the California Legislature which consists of the Senate and Assembly .…' (Cal. Const. art. IV, § 1.)  It is in the nature of state constitutions that they, unlike the federal Constitution, generally do not grant only limited powers.  (*Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 29.)  Consequently, 'unlike the United States Congress, which possesses only those specific powers delegated to it by the federal Constitution, it is well established that the California Legislature possesses *plenary* legislative authority except as specifically limited by the California Constitution.' (*Id.* at p. 31.)  Lying at the core of that plenary authority is the power to enact laws.  (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 254.)  It has been said that pursuant to that authority, '[t]he Legislature has the *actual* power to pass any act it pleases,' subject only to those limits that may arise elsewhere in the state or federal Constitutions." (*Howard Jarvis Taxpayers Assn. v. Padilla* (2016) 62 Cal.4th 486, 497–498.)

"[O]rdinarily a final judgment is conclusive." (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 980; accord, *Marine Forests Society v. California Coastal Com.*, *supra*, 36 Cal.4th at p. 25)  However, as set forth above, "it is the function of the legislative branch to define crimes and prescribe punishments, and … such questions are in the first instance for the judgment of the Legislature alone." (*In re Lynch* (1972) 8 Cal.3d 410, 414; accord, *People v. Chun* (2009) 45 Cal.4th 1172, 1183; *Manduley v. Superior Court*, *supra*, 27 Cal.4th at p. 552; see *Howard Jarvis Taxpayers Assn. v. Padilla*, *supra*, 62

31.

Cal.4th at p. 499 ["The principal function of a legislature is 'to enact wise and well-formed and needful laws [citation] ....'"].)**10**

### 1. Cases Holding Final Judgments Yield to Broader Penal Reform

As respondent acknowledges, there is authority for the proposition that where broader penal reform is at issue, "some legislative interference with final court judgments is permissible." In *Way v. Superior Court* (1977) 74 Cal.App.3d 165 (*Way*), the Court of Appeal considered a challenge to the repeal of the Indeterminate Sentencing Law and enactment of the Uniform Determinate Sentencing Act of 1976 (Determinate Sentencing Act), effective July 1, 1977. (*Way*, *supra*, at pp. 168–169). "In contrast to the [Indeterminate Sentencing Law], which was designed 'to mitigate the punishment[,] place emphasis upon the reformation of the offender,' and 'make the punishment fit the criminal rather than the crime' [citation], the [Determinate Sentencing] Act declares that 'the purpose of imprisonment for crime is *punishment*. This purpose is best served by … provision for uniformity in the sentences of offenders….' (Pen. Code, § 1170, subd. (a)(1).) [¶] To achieve *total* uniformity, … section 1170.2 provides for retroactive application of the [Determinate Sentencing] Act to prisoners incarcerated under the [Indeterminate Sentencing Law]." (*Id.* at p. 169.)

The Determinate Sentencing Act was challenged by a group of judges on the ground that it violated the separation of powers doctrine. (*Way*, *supra*, 74 Cal.App.3d at pp. 169–170.) The Court of Appeal concluded that the Legislature lacked the power to grant a commutation or pardon, a power vested exclusively in the Governor (*id.* at pp. 175–176), but that the motivation underlying section 1170.2 was "to restructure punishments for criminal conduct and to make them uniform to the extent reasonably

---

**10** As respondent points out, "'[t]he power of the people through the statutory initiative is coextensive with the power of the Legislature.'" (*Manduley v. Superior Court*, *supra*, 27 Cal.4th at p. 552.) The claim here, however, is that the Legislature impermissibly intruded into core functions of the judicial and executive branches by upending final judgments and exercising clemency.

possible[]" (*Way*, *supra*, at p. 177).  As such, the statute "undertook no act of mercy, grace, or forgiveness toward past offenders, such as characterizes true commutations." (*Ibid.*)  Although existing prison terms were shortened under the Determinate Sentencing Act, it was "purely incidental to the main legislative purpose .…"  (*Ibid.*)[11]

The court further concluded that the retroactive change did not disturb the rule "that once a judgment in a criminal case becomes final, it may not be reduced by subsequent legislative action."  (*Way*, *supra*, 74 Cal.App.3d at p. 179.)  The court explained, "The distinction is that in this case final judgments will be reduced only as an incident of a major and comprehensive reform of an entire penal system.  In view of the legislative objective, the final judgment rule must yield."  (*Id.* at p. 180.)

Two years later, another Court of Appeal considered whether section 209, which was amended under the Determinate Sentencing Act to provide that kidnapping for robbery was punishable by life with the possibility of parole, applied retroactively to a defendant serving a sentence of life without the possibility of parole under the prior version of the statute.  (*People v. Community Release Bd.* (1979) 96 Cal.App.3d 792, 794.)  The amendment to section 209 was not expressly retroactive and the court concluded that because the amendment was ameliorative, it was to be applied retroactively "'to every case to which it constitutionally could apply.'"  (*People v. Community Release Bd.*, *supra*, at p. 799, quoting *In re Estrada* (1965) 63 Cal.2d 740, 745.)  Relying on *Way*, the court further concluded that the amendment applied retroactively to the case before it, notwithstanding that judgment was final, because "the retroactivity feature was merely incidental to the proper legislative function of revising the penal laws."  (*People v. Community Release Bd.*, *supra*, at p. 800.)  The court

---

[11]    As discussed further, *post*, the California Supreme Court cited the commutation analysis in *Way* with approval when it rejected a challenge to legislation providing for the destruction of marijuana arrest or conviction records, a challenge premised on legislative interference with executive clemency power.  (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 117–118 (*Younger*).)

observed, "We therefore take it as settled that legislation reducing punishment for crime may constitutionally be applied to prisoners whose judgments have become final." (*Ibid.*)

Subsequently, the Court of Appeal in *In re Chavez* considered a 2001 amendment to a statute criminalizing the filing of a false personal income tax return. (*In re Chavez* (2004) 114 Cal.App.4th 989, 992 (*Chavez*).) Under the Determinate Sentencing Act, the punishment for the crime was 16 months, two years or three years. (*Id.* at p. 994.) In 1983, the statute was revised pursuant to an extensive bill (*id.* at pp. 994–995), and that revision resulted in the inclusion of language reflecting an indeterminate sentence of "'not more than three years'" (*id.* at p. 995). The statute was renumbered in 1993 but retained the language reflecting an indeterminate sentence. (*Ibid.*) In 2001, the statute was amended again to return the punishment to that provided for under the Determinate Sentencing Act: 16 months, two years or three years. (*Id.* at pp. 991–992.)

At issue in *Chavez* was whether the two defendants who were serving indeterminate sentences under the prior version of the statute were entitled to benefit from the 2001 amendment despite the finality of their judgments. (*Chavez*, *supra*, 114 Cal.App.4th at pp. 992–993.) The court concluded that the statute was amended in 2001 to effect a nonsubstantive correction resulting from an earlier drafting error with respect to the indeterminate sentence language and that the amendment was intended to apply retroactively to all whom it could apply. (*Id.* at pp. 998–999.) The Attorney General argued that the amendment did not apply in cases where judgment was final because the "amendment was not passed as part of a major and comprehensive reform of the entire penal system." (*Id.* at p. 1000.) The court rejected the argument, stating, "It … appears settled that a final judgment is not immune from the Legislature's power to adjust prison sentences for a legitimate public purpose. [Citations.] We conclude that the purpose of achieving equality and uniformity in felony sentencing is a legitimate public purpose to which the finality of judgment must yield." (*Ibid.*, fn. omitted.)

34.

### 2. *Bunn* Decision

Notwithstanding the foregoing authority, respondent relies on the California Supreme Court's decision in *Bunn* in support of her argument that the Legislature may not subvert final judgments. We are not persuaded that *Bunn* applies, however.

Prior to 1994, the statutes of limitations applicable to felony sex crimes committed against children were three and six years, and the Legislature determined that these periods were inadequate given the problems inherent in sex crimes against children: delay in reporting, the victims' difficulty in recalling and recounting the abuse, and "their vulnerability to adults in positions of authority and trust." (*Bunn*, *supra*, 27 Cal.4th at p. 6 [discussing former §§ 800 & 801].) In response, the Legislature enacted a statute that, following subsequent amendments, "authorize[d] prosecution for criminal acts committed many years beforehand—and where the original limitations period ha[d] expired—as long as prosecution beg[an] within a year of a victim's first complaint to the police" (*Stogner v. California* (2003) 539 U.S. 607, 609 [addressing § 803, former subd. (g)]) (*Stogner*); *Bunn*, *supra*, at pp. 6–11.)

In *People v. Frazer*, the California Supreme Court upheld the statute as constitutional in the face of a challenge on ex post facto and due process grounds. (*People v. Frazer* (1999) 21 Cal.4th 737, 742–743, abrogated by *Stogner*, *supra*, 539 U.S. at pp. 632–633 [holding § 803, former subd. (g)'s revival of a time-barred prosecution violates ex post facto clause].) Subsequently, in the companion cases of *Bunn* and *King*, the California Supreme Court considered a challenge to section 803, former subdivision (g), on the ground that the statute violated the separation of powers doctrine. (*Bunn*, *supra*, 27 Cal.4th at p. 5; *People v. King* (2002) 27 Cal.4th 29, 31 (*King*).) Relying on the United States Supreme Court's separation of powers analysis in *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211 (*Plaut*), which involved a statute of limitations issue in a civil suit for damages, the California Supreme Court concluded that section 803, former subdivision (g), was unconstitutional insofar as the "refiling

35.

provision supplants final judgments, and thus invades the judicial power in violation of the separation of powers clause of the California Constitution (art. III, § 3)." (*King*, *supra*, at p. 31; accord, *Bunn*, *supra*, at p. 25.)

In *Bunn*, the court observed, "*Plaut* … declared, in almost talismanic form, that Congress lacks the power to 'reopen' [citation], 'correct' [citation], "'reverse'" [citation], 'revise' [citation], 'vacate' [citation], or 'annul' [citation] final court judgments. The controlling separation of powers principle was stated as follows: 'Having achieved finality, … a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was.'" (*Bunn*, *supra*, 27 Cal. 4th at p. 19.) "Moreover, notwithstanding the constitutional protection afforded final judgments on an individual basis, [the statute at issue in *Plaut*] did not somehow escape separation of powers scrutiny merely because the reopening provision affected 'a whole class of cases.' [Citation.] The court reiterated that a separation of powers violation occurs when postjudgment legislation deprives court decisions 'of the conclusive effect that they had when they were announced.' [Citation.] Thus, whether a statute targets particular suits or parties, or whether it purports to apply more generally …, the critical factor for separation of powers purposes is whether such impermissible legislative interference with final judgments has occurred." (*Id.* at pp. 20–21.)

Despite the arguably broad language in *Plaut*, its federal constitutional separation of powers analysis is not binding.[12] Furthermore, "[i]t is … 'axiomatic that a decision does not stand for a proposition not considered by the court[]'" (*Wishnev*, *supra*, 8

---

[12] "[T]he doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States" (*Whalen v. United States* (1980) 445 U.S. 684, 689, fn. 4), and federal separation of powers decisions are not binding, although they may have persuasive value (*Marine Forests Society v. California Coastal Com.*, *supra*, 36 Cal.4th at pp. 29–30).

Cal.5th at p. 217) and, in *Bunn*, the California Supreme Court's specifically held as follows: "[A] *refiling* provision like section 803(g) cannot be retroactively applied to subvert judgments that became final before the provision took effect, and before the law of finality changed. This ban applies even where lawmakers have acted for 'the very best of reasons' [citation], and whether or not legislative disagreement with the 'legal rule' underlying the judgment has been expressed" (*Bunn*, *supra*, 27 Cal.4th at pp. 24–25, italics added).

Both *Plaut* and *Bunn* confronted legislative amendment to statutes of limitation that resulted in the revival of time-barred actions where judgment was final, and both courts concluded that in cases where judgment was final, such legislation violated the separation of powers doctrine by reopening final judgments. (*Plaut*, *supra*, 514 U.S. at p. 240; *Bunn*, *supra*, 27 Cal.4th at p. 24.) While *Plaut*, in interpreting the separation of powers doctrine under the federal constitution, found it "irrelevant … that the final judgments reopened by [the statute at issue] rested on the bar of a statute of limitations" (*Plaut*, *supra*, at p. 228), we decline to divorce the decision in *Bunn* from its context given that "[t]he purpose of separation of powers is to protect individual liberty by preventing concentration of powers in the hands of any one individual or body." (*Obrien v. Jones* (2000) 23 Cal.4th 40, 65.)

Relevant to our discussion, post-*Plaut* and *Bunn*, the United States Supreme Court reversed a California Supreme Court decision holding that former section 803 did not, in reviving time-barred criminal cases, violate the ex post facto clause. (*Stogner*, *supra*, 539 U.S. at p. 609.) The court addressed four categories of ex post facto laws and although it found the statute unconstitutional because it fell within the category of laws that "'inflicted punishments, where the party was not, by law, liable to any punishment'" (*id.* at p. 612, italics omitted), the court also recognized that the statute potentially violated the ex post facto clause under another category by violating the rules of evidence (*id.* at p. 615). Within this context, the court explained, "Significantly, a statute of limitations

37.

reflects a legislative judgment that, after a certain time, no quantum of evidence is sufficient to convict.  [Citation.]  And that judgment typically rests, in large part, upon evidentiary concerns—for example, concern that the passage of time has eroded memories or made witnesses or other evidence unavailable.  [Citation.]  Indeed, this Court once described statutes of limitations as creating 'a presumption which renders proof unnecessary.'  [Citation.]  [¶]  Consequently, to resurrect a prosecution after the relevant statute of limitations has expired is to eliminate a currently existing conclusive presumption forbidding prosecution, and thereby to permit conviction on a quantum of evidence where that quantum, at the time the new law is enacted, would have been legally insufficient." (*Id.* at pp. 615–616.)

It is well established that "[o]nce the statute of limitations for an offense expires without the commencement of prosecution, prosecution for that offense is forever time-barred." (*People v. Robinson* (2010) 47 Cal.4th 1104, 1112, citing *Stogner*, *supra*, 539 U.S. at pp. 615–616; see *People v. Williams* (1999) 21 Cal.4th 335, 341; *People v. Gerold* (2009) 174 Cal.App.4th 781, 787.)  Given both that the specific statute at issue in *Bunn* reached into a final judgment to revive a time-barred criminal action, directly undermining individual liberty interests, and the specific legislative concerns underlying statutes of limitation, as discussed in the preceding paragraph, we reject an expansive view of *Bunn*, and *King*, as standing for the proposition that under no circumstance may a final judgment be disturbed. (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 260.)  Such a broad reach would be at odds with the proposition that there is no separation of powers violation where the legislation at issue advances "a legitimate public purpose to which the finality of the judgment must yield." (*Chavez*, *supra*, 114 Cal.App.4th at p. 1000.)

### 3. Effect on Final Judgments Incidental to Broader Penal Reform

In sum, the Legislature enjoys plenary power "to define crimes and establish penalties therefor[]" (*People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1400; accord, *People v. Chun*, *supra*, 45 Cal.4th at p. 1183), and a duly enacted statute is

presumed constitutional (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1086; accord, *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 509). The central focus of Senate Bill No. 1437 is equity: ensuring that criminal liability for murder aligns with individual culpability. This is not a novel concept and our high court has stated, "[I]t is now firmly established that '[t]he concept of proportionality is central to the Eighth Amendment,' and that '[e]mbodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." [Citation.]'" (*In re Coley* (2012) 55 Cal.4th 524, 538.)

In *Enmund v. Florida*, the United States Supreme Court concluded that in imposing the death penalty, the Constitution requires individualized consideration of the defendant's culpability. (*Enmund v. Florida* (1982) 458 U.S. 782, 798 (*Enmund*).) Subsequently, in *Tison v. Arizona*, the United States Supreme Court held that the *Enmund* standard of culpability that must be met to impose the death penalty is "major participation in the felony committed, combined with reckless indifference to human life[.]" (*Tison v. Arizona* (1987) 481 U.S. 137, 158 (*Tison*).) The court stated, "A critical facet of the individualized determination of culpability required in capital cases is the mental state with which the defendant commits the crime. Deeply ingrained in our legal tradition is the idea that the more purposeful is the criminal conduct, the more serious is the offense, and, therefore, the more severely it ought to be punished." (*Id.* at p. 156.) The *Tison* standard was thereafter codified in section 190.2, subdivision (d), which was amended by Proposition 115. (Voter Information Guide, *supra*, text of Prop. 115, § 10, p. 66; *People v. Banks*, *supra*, 61 Cal.4th at p. 794.)

More recently, there has been a sea change in the law, procedurally and substantively, with respect to juvenile offenders (*Montgomery v. Louisiana* (2016) ___U.S. ___ [136 S.Ct. 718, 734–735]), grounded in the recognition that children differ

39.

from adults because of their "'diminished culpability and greater prospects for reform'" (*id.* at p. 733).

Given the legislative intent underlying Senate Bill No. 1437 and viewed in the context of broader changes in the law tightening the connection between criminal liability and individual culpability, we conclude that Senate Bill No. 1437, rather than impermissibly targeting a specific case or class of cases, is directed at broader penal reform. Viewed through that lens, that some final judgments will necessarily be reopened pursuant to the change in the law is purely incidental to the broader reformation of the law. As such, the change to the crime of murder is analogous to the change to the sentencing law effected by the Determinate Sentencing Act.

More recently, as detailed by the Court of Appeal in *Lamoureux*, the Three Strikes Reform Act of 2012 (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)), which reduced punishment for certain offenders, and the Safe Neighborhoods and Schools Act (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)), which reduced certain theft- and drug-related felonies to misdemeanors, are both well-known ameliorative measures that provide for postfinal judgment relief. (*Lamoureux*, *supra*, 42 Cal.App.5th at pp. 262–263.) The court also cited several other less well-known examples (*id.* at p. 263, citing Health & Saf. Code, § 11361.8, subd. (a), Pen. Code, §§ 1170.22, 1170.91), and commented, "The prevalence of such legislation is not a sufficient reason on its own to affirm the constitutionality of section 1170.95 on separation of powers grounds. However, in our view, it confirms there is nothing especially unique about section 1170.95, which appears to us to constitute a legitimate and ordinary exercise of legislative authority. Further, it demonstrates the sweeping breadth and potentially drastic implications of the People's separation of powers argument. Extending the holdings of the *Bunn* and *King* decisions to prohibit the retroactive reopening of final judgments of conviction would call into question the constitutionality of all the statutory provisions described *ante*, and potentially others. Because we conclude such an

40.

extension is unwarranted, we need not grapple with those potentially far-reaching consequences any further today" (*Lamoureux*, *supra*, at p. 264).

## C.    Clemency Power

Respondent also argues Senate Bill No. 1437 violates the separation of powers doctrine by impermissibly infringing upon the governor's pardon power, a core function of the executive branch.  We find this argument similarly unpersuasive.

The power to grant clemency is vested in the executive branch (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 254; *Way*, *supra*, 74 Cal.App.3d at p. 175), and is an act of mercy or grace (*Lamoureux*, *supra*, at p. 254; *People v. Shepard* (2015) 239 Cal.App.4th 786, 796; *Santos v. Brown*, *supra*, 238 Cal.App.4th at p. 419).  In *Way*, discussed in the preceding section, the Court of Appeal concluded that in enacting section 1170.2 under the Determinate Sentencing Act, the Legislature's motivation was "to restructure punishments for criminal conduct and to make them uniform to the extent reasonably possible[]" and "[i]t undertook no act of mercy, grace, or forgiveness toward past offenders, such as characterizes true commutations."  (*Way*, *supra*, at p. 177.)  The court concluded that "the shortening of existing prison terms by section 1170.2 is purely incidental to the main legislative purpose" (*id.* at p. 177), and is "valid as incidental to a comprehensive reformation of California's penal system[]" (*id.* at p. 178).

Subsequently, the California Supreme Court relied on the reasoning in *Way* and upheld a statute authorizing the destruction of marijuana arrest and conviction records. (*Younger*, *supra*, 21 Cal.3d at pp. 117–118.)  The court held the statute "does not authorize destruction of records of a conviction for marijuana possession as an act of grace, but as a means of implementing the Legislature's principal objective of reducing the adverse social and personal effects of that conviction which linger long after the prescribed punishment has been completed.  Any infringement on the power of executive clemency is thus purely incidental to the main purpose of the statute—which is well

within the province of the Legislature—and hence does not violate the separation of powers." (*Id.* at p. 118.)

We agree with the court in *Lamoureux* that the rationale of *Way* and *Younger* applies here. (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 255.) As explained in *Lamoureux*, "in cases where a petitioner makes a prima facie showing of entitlement to relief (§ 1170.95, subd. (c)), and the prosecution fails to carry its burden of proving the petitioner is ineligible for resentencing (*id.*, subd. (d)(3)), murder sentences may be vacated and sentences recalled (*id.*, subd. (d)(1)). Although section 1170.95 requires resentencing on remaining counts, such that a given prisoner's overall sentence may not actually be shortened (*id.*, subd. (d)(1)), it is apparent and undisputed that at least some successful petitioners will obtain shorter sentences or even release from prison. [¶] However, the objective of the Legislature in approving section 1170.95—like the legislative aims underpinning the challenged laws in the *Way* and *Younger* cases—was not to extend 'an act of grace' to petitioners. [Citations.] Rather, the Legislature's statement of findings and declarations confirms it approved Senate Bill 1437 as part of a broad penal reform effort. The purpose of that undertaking was to ensure our state's murder laws 'fairly address[] the culpability of the individual and assist[] in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual.' [Citations.]

"The outcome of a successful petition under section 1170.95 further underscores the fact that section 1170.95 is not merely an act of grace akin to an exercise of executive clemency. As noted *ante*, '[a] successful Senate Bill 1437 petitioner's criminal culpability does not simply evaporate; a meritorious section 1170.95 petition is not a get-out-of-jail free card. Instead, the petitioner is resentenced on the remaining convictions. If the murder was charged "generically" and the target offense was not charged, the murder conviction must be redesignated as the target offense or underlying felony for resentencing purposes.' [Citation.] Thus, while some qualifying petitioners certainly

may obtain reduced prison sentences under section 1170.95, there is no guarantee of such an outcome. [¶] In accordance with the *Younger* and *Way* decisions, it is clear … that section 1170.95's interference with the executive's clemency authority, if any, is merely incidental to the main legislative purpose of Senate Bill 1437." (*Lamoureux*, *supra*, 42 Cal.App.5th at pp. 255–256.) As such, "section 1170.95 does not impermissibly encroach upon the core functions of the executive." (*Id.* at p. 256.)

## III. Remaining Claims Seek Advisory Opinion

Finally, although respondent concedes these issues are not presented by this appeal, she argues that the evidentiary hearing provided for under section 1170.95, subdivision (d)(3), potentially violates the double jeopardy clause; the remedies provided for under section 1170.95, subdivision (e), in cases not involving an underlying offense are susceptible to challenge based on the rights to due process and a jury trial; and that in some cases, the statute of limitations, which cannot be revived, will have lapsed for the target offense. These claims, however, are not ripe for adjudication and, therefore, any opinion on these issues would be premature and advisory. (*People v. Miracle* (2018) 6 Cal.5th 318, 337 ["'We will not … adjudicate hypothetical claims or render purely advisory opinions.'"]; *People v. Buza* (2018) 4 Cal.5th 658, 693 ["We … abide by … a "'cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more.'""]; *People v. Mosley* (2015) 60 Cal.4th 1044, 1054–1055, fn. 7 ["[T]rue adherence to judicial restraint and economy counsels against an unnecessary detour into an analysis of … statutory meaning [on an issue not before the court]."].)

Furthermore, as the court stated in *Lamoureux*, "[t]he People are the individuals on whose behalf violations of criminal laws are prosecuted." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 267.) "[T]hey do not represent the particularized interests of persons who have been accused of criminal offenses or petitioners seeking relief from convictions[]" and therefore, they "lack standing to challenge the hearing and remedy

43.

provisions of section 1170.95 based on any alleged infringement on petitioners' constitutional rights." (*Lamoureux*, *supra*, at p. 267, citing *In re Cregler* (1961) 56 Cal.2d 308, 313 ["'[O]ne will not be heard to attack a statute on grounds that are not shown to be applicable to himself .…'"]; accord, *Teal v. Superior Court* (2014) 60 Cal.4th 595, 599, italics omitted ["'As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator.'"].) Accordingly, we do not reach these claims.

## DISPOSITION

The judgment is reversed and this matter is remanded to the trial court for further proceedings under section 1170.95.


MEEHAN, J.

I CONCUR:


SMITH, J.

44.

POOCHIGIAN, Acting P.J., concurring and dissenting.

Several appellate decisions in California have held that Senate Bill No. 1437 (2017–2018 Reg. Sess.) (S.B. 1437) did not amend Proposition 7.  Those cases have relied on the premise that S.B. 1437 dealt with the punishment for murder as a related "but distinct" subject from the substantive elements of murder.  (See, e.g., *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 282.)  I do not view the two subjects as distinct and would hold that S.B. 1437 improperly amended Proposition 7.  I respectfully dissent from the majority's contrary holding on that issue, but otherwise concur as to the other issues presented.

*Courts have a Duty to Jealously Guard the Initiative Power*

As noted by the majority, Proposition 7 " 'did not authorize the Legislature to amend its provisions without voter approval,' " and the amendment of Proposition 7 through legislative action is precluded by the California Constitution (Cal. Const., art. II, § 10, subd. (c)).  (Maj. opn., *ante*, at p. 9.)

The majority opinion and other decisions opining on the constitutionality of S.B. 1437 all acknowledge that "[u]nder our constitutional system the Legislature is not the exclusive source of legislative power."  (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1042; *People v. Hannon* (2016) 5 Cal.App.5th 94, 100.)  "The legislative power of this State is vested in the California Legislature which consists of the Senate and the Assembly, but the people reserve to themselves the powers of initiative and referendum."  (Cal. Const., art. IV, § 1.)  "The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them."  (Cal. Const., art. II, § 8, subd. (a).)

"It has long been recognized that 'the initiative is in essence a legislative battering ram which may be used to tear through the exasperating tangle of the traditional legislative procedure and strike directly toward the desired end.' [Citation.]"  (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 357.)  "[I]t is our solemn duty ' "to jealously guard" '

the initiative power, it being ' "one of the most precious rights of our democratic process." ' [Citation.]" (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 248; *Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245, 250; *Rossi v. Brown* (1995) 9 Cal.4th 688, 695; *Legislature v. Eu* (1991) 54 Cal.3d 492, 500–501.)

As part of their initiative system, the voters also have " 'the power to decide whether or not the Legislature can amend or repeal initiative statutes. This power is absolute and includes the power to enable legislative amendment *subject to conditions attached by the voters*. [Citation.]' [Citation.]" (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1251; *Professional Engineers in California Government v. Kempton*, *supra*, 40 Cal.4th at p. 1046, fn. 10.) "The people's reserved power of initiative *is* greater than the power of the legislative body. The latter may not bind future Legislatures [citation], but by constitutional and charter mandate, unless an initiative measure expressly provides otherwise, an initiative measure may be amended or repealed only by the electorate. Thus, through exercise of the initiative power the people *may* bind future legislative bodies other than the people themselves. [Citations.]" (*Rossi v. Brown*, *supra*, 9 Cal.4th at pp. 715–716.)

"There is a presumption, though not conclusive, that voters are aware of existing laws at the time a voter initiative is adopted. [Citations.]" (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 410; *People v. Hannon*, *supra*, 5 Cal.App.5th at p. 101.) " 'The purpose of California's constitutional limitation on the Legislature's power to amend initiative statutes is to "protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent." [Citations.]' [Citation.] In this vein, decisions frequently have asserted that courts have a duty to ' " 'jealously guard' " ' the people's initiative power, and hence to ' " 'apply a liberal construction to this power wherever it is challenged in order that the right' " ' to

2

resort to the initiative process ' " 'be not improperly annulled' " ' by a legislative body. [Citations.]" (*People v. Kelly* (2010) 47 Cal.4th 1008, 1025.)

> *Defining Criminal Conduct and Setting the Punishment that Attaches to Criminal Conduct May not be Entirely Distinct*

Despite these protections, the Legislature may legislate on "a subject related to, but distinct from, an area addressed by an initiative." (See *Gooden*, *supra*, 42 Cal.App.5th at p. 282; *Kelly, supra*, 47 Cal.4th at pp. 1025–1026.) Cases addressing whether S.B. 1437 amends Proposition 7 have insisted that punishments and the elements of the crime to which they apply are related, but "distinct" subjects. (See, e.g., *Gooden*, *supra*, at pp. 281–282.) I disagree.

It is true that the elements of an offense and the punishment for it are not literally synonymous, but neither are they "distinct." Punishment is the set of consequences the law attaches to certain human conduct classified as a crime. As a result, when the *substantive scope of a crime* is reduced, the direct effect is that at least some real-world conduct is no longer *punishable* as that particular crime.

For example, imagine a jurisdiction where the only crime relating to driving under the influence was defined as "operating a motor vehicle with a blood-alcohol content of over 0.08 percent" and carried a punishment of 6 months in jail. And suppose that statute is subsequently amended to raise the threshold blood-alcohol content to 0.10 percent. One could say such an amendment "merely" redefines the crime and does not expressly speak to punishment. But this formalistic distinction is illusory, because the amendment to the substantive crime had the direct effect of eliminating punishment for certain conduct – e.g., operating a motor vehicle with a blood-alcohol content of 0.09 percent.

Through Proposition 7, the voters said they wanted particular punishments to apply to particular conduct. Under S.B. 1437, some conduct that would previously have

3

constituted murder is no longer punishable as such. In this way, S.B. 1437 *directly* alters the punishment Proposition 7 set for certain conduct.[1]

Put in slightly different terms, S.B. 1437 "prohibits" something Proposition 7 "authorized." Specifically, Proposition 7 authorized harsher penalties for murder, *including* the subcategory of conduct that S.B. 1437 subsequently removed from the definition of murder. In contrast, S.B. 1437 effectively *prohibits* punishment of that subcategory of conduct under the harsher penalties *authorized* by Proposition 7.

*Conclusion*

It is important that criminal punishment is commensurate with the level of culpability involved. S.B. 1437 admirably seeks a better fit between punishment and culpability in the context of felony murder. But the issue before us is not whether S.B. 1437 is wise policy. The issue is whether it amended Proposition 7. If so, S.B. 1437 must yield, even if it better reflects modern views of penology. The reform it seeks must come from the electorate, not the Legislature or the courts.

Whether or not the various opinions upholding the constitutionality of S.B. 1437 ultimately prevail, it is my hope that our commitment to the principle that the people's

---

[1] *Gooden* says voters did not intend to "freeze" the substantive offense of murder as it was understood in 1978. (*Gooden, supra*, 42 Cal.App.5th at p. 283; see also maj. opn., *ante*, at p. 16.)

However, I do not see how to reconcile that conclusion with the fact that, in enacting Proposition 7, the voters were "calling for harsher punishment for those convicted of murder." (Maj. opn., *ante*, at p. 16.) What does "murder" mean in this context if not the real-world conduct legally classified as murder in 1978? What else could they have meant? It is not as if the voters did not care what actual conduct was subject to the harsher penalties in the future so long as that conduct was formally labeled "murder."

There is simply no limiting principle to the purported distinction between punishment and the elements of the offense being punished. Imagine the Legislature passed a statute adding an element to murder requiring that the killing be accomplished with a firearm. Would our courts conclude that such a legislative change, which arguably does not directly relate to the breadth of culpability, amends Proposition 7?

constitutional initiative power must be jealously guarded and cannot be legislatively nullified remains strong and steadfast.

For these reasons, I respectfully dissent.

POOCHIGIAN, Acting P.J.